## Davis R. Stockwell *vs.* Daniel Silloway.

Charges of fraud under the Gen. Sts. *c.* 124, §§ 31–34, against a person applying to take the oath for the relief of poor debtors, are sufficient, if stated with such fulness, clearness and precision as to inform him of the nature and particulars of the transaction intended to be proved against him, without being in a form appropriate to an indictment or criminal complaint.

In charges of fraud under the Gen. Sts. *c.* 124, §§ 31–34, against a person applying to take the oath for the relief of poor debtors, the fraudulent acts are sufficiently alleged as facts by an averment, under the oath of the creditor, that he "believes, and has good reason to believe, and charges" them; may be specified by reference to documents annexed; need not be alleged with any venue; and, if alleged in time as "on or about" a day named within the limitation prescribed in § 31, the defect is not necessarily fatal, but may be cured by amendment.

The provisions of the Gen. Sts. *c.* 124, §§ 31-34, concerning charges of fraud against a person applying to take the oath for the relief of poor debtors are not unconstitutional in allowing the creditor to appeal from the decision of the magistrate in favor of the debtor and to have a new trial of the charges by a jury.

Proceedings in bankruptcy commenced by a debtor under the United States bankrupt act of 1867, *c.* 176, pending an appeal in the superior court from the judgment of a magistrate in his favor on charges of fraud preferred against him under the Gen. Sts. *c.* 124, §§ 31-34, are no bar to the prosecution of the appeal, especially if the charges were filed before the bankrupt act took effect.

POOR DEBTORS' OATH. On December 29, 1866, after the arrest of the defendant on an execution issued on a judgment recovered in a civil action, and pending his examination before a commissioner of insolvency upon his application to be admitted to take the oath for the relief of poor debtors, the attorney of the judgment creditor, in his behalf, filed charges of fraud in these terms : " I, Henry Carter, of Bradford, in behalf of said Stockwell, on oath make affidavit and say, that I believe, and have good reason to believe, and charge :

" *First.* That, since the debt was contracted and the cause of action accrued, for which said Silloway has been arrested in this case, said Silloway has fraudulently conveyed, concealed and otherwise disposed of some part of his estate with a design to secure the same to his own use and to defraud his creditors.

" *Second.* That said Silloway on September 17, 1866, made a conveyance to Thomas Huse, of Newburyport, of all his right, title, interest, estate and claim in, to and upon certain real estate, as is more fully set forth in the deed of conveyance, a copy of which is hereto annexed, marked ' A,' and that said conveyance was made after the debt was contracted and the cause of action accrued for which said Silloway has been arrested in this case, and with a design to secure the same to his own use and to defraud his creditors."

The third, fourth, fifth, sixth and seventh charges, alleging the making of other conveyances of property in September, October and November 1866, were in form similar to the second, except that in the fourth and subsequent charges the dates were described as " on or about " a day named.

The charges were signed by said Carter, and supported by his oath (certified by the magistrate) " that the above affidavit by him subscribed is true."

The debtor pleaded, and the magistrate found, that he was not guilty of these charges; and the creditor appealed to the superior court.

At September term 1867 of that court the debtor moved to dismiss the appeal for the following reasons:

*First.* " Because said charges, being charges of a criminal nature, and of offences punishable by imprisonment, are wholly insufficient, informal and invalid, and for that reason they, and each of them, ought to be quashed and dismissed; and herein :

" 1. There is no direct allegation of any fact, but merely an allegation that the complainant says 'that he believes and has good reason to believe and charges that' certain things have been done, and not a direct charge, upon the oath of said complainant, that such things have been done; and this is true of each of said charges and specifications.

" 2. Neither of said charges charges said appellee with an offence formally, plainly and substantially, as required by the laws and Constitution of the Commonwealth.

" 3. Said first charge is wholly uncertain, informal and insufficient; and charges nothing definitely.

" 4. Said second charge is defective, in that it contains no venue; that it contains no description of the estate said to have been conveyed; that in an instrument requiring as much particularity and precision as an indictment it is not sufficient to refer to material documents as is done in this case; that there is no sufficient allegation that the acts done and conveyance made were done and made with the fraudulent design alleged.

" 5. Said third charge is defective for the same reasons as are above set forth.

" 6. Said fourth, fifth, sixth and seventh charges are defective for the same reasons as are above set forth; and also for the further reason that the only allegation of time in each of said charges is ' on or about' a certain day."

*Second.* " Because said charges do not appear to be made upon the oath of said Carter, and by the jurat it appears that said Carter made oath to the truth of the ' above affidavit,' the ' above affidavit' being ' that he believed, and had reason

to believe, and charged ; ' so that the oath of said Carter was to the effect that he believed, and had good reason to believe, and charged, but not that what he believed and charged was true."

*Third.* "Because, so far as this proceeding is a proceeding of a criminal nature, the object of which is the punishment and imprisonment of this appellee, it is contrary to the policy of the law to allow such process to be carried on by a private prosecutor, and for private purposes, and especially it is contrary to said policy to allow an appeal from a judgment of not guilty."

*Fourth.* " Because a judgment of not guilty, by a magistrate of competent final jurisdiction, cannot be appealed from."

*Fifth.* " Because it appears by this record that the appellee has been acquitted of these precise charges by a court of competent jurisdiction."

*Sixth.* "Because this court has no jurisdiction of the subject matter of this appeal, and has no power or authority to enter any judgment in this case."

At December term 1867 of that court the debtor pleaded in bar that since the last continuance he had filed a petition in bankruptcy before the district court of the United States for the district of Massachusetts, and had been thereon adjudged a bankrupt, a meeting of his creditors held, and an assignee appointed, and that the proceedings in bankruptcy were still pending. To this plea the creditor demurred.

The superior court overruled the demurrer, and gave judgment for the debtor; and the creditor appealed to this court, before which the case was argued at the law term for the Commonwealth at Boston in January 1868.

*H. Carter,* for the creditor.

*S. B. Ives, Jr.,* for the debtor. 1. The motion to dismiss is well taken. 'It was held in *Chamberlain* v. *Hoogs,* 1 Gray, 172, that proceedings under the Rev. Sts. *c.* 98, § 30, were so far criminal proceedings that the provisions of the practice act denying motions in arrest of judgment in civil cases did not apply to them ; and that the charges of fraud in such a case as this were charges of a criminal nature, " requirer to be fully, plainly, and formally described to the party charged, before he can be held to answe

to them ;" and in that case judgment was arrested after verdict. In Parker v. Page, 4 Gray, 533, it is true that it was held that proceedings of this kind were so far civil proceedings as to be properly cognizable at civil terms of the court of common pleas; but the decision relates to, and its argument is founded on, only the course and manner of proceeding, and it is nowhere suggested that the ruling in *Chamberlain* v. *Hoogs*, or the reasons for it, are not entirely correct.

There is no direct charge here of any fact in the manner required by the statute. The language of the affidavit is, that Carter " believes, and has reason to believe, and charges," that certain things have been done. The statute requires that the creditor file charges in writing, and refers to § 5 for the proper subjects of such charges. Section 5 describes the allegations necessary for the purpose of an arrest; and requires a direct assertion and proof. By the St. of 1860, *c.* 215, it has been provided that for that purpose the creditor may merely make oath and prove that he " believes and has reason to believe ;" but this amendment of § 5 cannot be imported into § 31. It cannot be that the debtor can be punished by imprisonment upon proof that the creditor believed or had reason to believe. The question to be tried is one of fact, not of belief. Besides, the jurat of the magistrate shows that no charges of fact were sworn to. It there appears that Carter made oath that the " above affidavit was true." But the above affidavit was merely that he " believed and had reason to believe, and charged ;" not that the facts stated in the charges were true. See *Willington* v. *Stearns*, 1 Pick. 497.

But further, applying the principles of *Chamberlain* v. *Hoogs* to the specifications, the first fails utterly to describe any offence so that the debtor can be called upon to answer it. The defects in the second are set forth in detail in the motion to dismiss. It may be true that no venue need be laid, as the jurisdiction of the magistrate does not depend upon the place of the act, and the reason for requiring allegations of place in an indictment would not apply. But in every other respect the objections are well taken under the rulings in *Chamberlain* v. *Hoogs,*

that the strictness of criminal proceedings is required in cases like this, and that no intendments can be supplied to aid the pleading. It would not suffice, in an indictment, to charge the defendant with criminal conduct in regard to " certain real estate more fully described in the deed of conveyance a copy of which is annexed ; " or with forgery of a promissory note " a copy of which is annexed ; " or with larceny of certain goods and chattels " a more particular description of which is continued in a schedule annexed." And there is no allegation that the conveyance was made with the fraudulent intent named in the statute. Waiving, for the purpose of the argument, the claim that it is necessary that time (if not place) must be alleged of every material fact, still the specification is defective. It charges that " said conveyance was made after the debt was contracted and the cause of action accrued," and " with a design to secure the same to his own use, and to defraud his creditors." What does " the same " refer to ? To the conveyance, the debt, or the cause of action ? Certainly not to the property conveyed. Again, there is no allegation that the property conveyed was part of the debtor's estate, as required by § 5 of the statute, nor that it was of any value. These considerations all apply to the remaining specifications ; which are also defective in the want of a sufficient allegation of time. To allege an act to have been done " on or about " a particular day is insufficient in an indictment ; and the provisions of § 31, limiting the time within which fraudulent acts are punishable under this act, disclose reasons why the same strictness of pleading should here be applied.

2. The statute is inoperative and void in assuming to give to the creditor a right of appeal from a judgment of not guilty. The magistrate had complete jurisdiction of the charges, and upon conviction could impose the sentence provided in § 34. To allow the creditor a new trial after an acquittal is in violation of the Gen. Sts. *c.* 158, § 6. The provision in the Constitution of the United States that no person shall be subject for the same offence to be twice put in jeopardy of life or limb is held to be a mere declaration of the common law principle that no

man shall be twice tried for the same offence.   Shaw, C. J., in *Commonwealth* v. *Roby*, 12 Pick. 502.   The right of the Commonwealth to an appeal or writ of error in a criminal case was denied, after very full consideration, in *Commonwealth* v. *Cummings*, 3 Cush. 212.

3. The practical difficulties in the way of enforcing the provisions of the statute seem insuperable.   Suppose that the defendant shall be found guilty on either of these charges, and a judgment entered that he shall take no benefit from the oath administered by the magistrate, and that he be imprisoned for a term of months.   *Collamore* v. *Fernald*, 3 Gray, 318.   The result is, that he is liable to be again taken on the execution, and thereupon sentenced to perpetual imprisonment; for upon any subsequent offer to take the oath the creditor has merely to file the charge of fraud upon which a judgment of guilty has been rendered.   The truth of the charge, having been once judicially established, cannot be controverted ; the magistrate must refuse the oath; and this must be repeated as often as an application is made.

4. By the U. S. St. of 1867, *c.* 176, § 26, the pendency of the proceedings in bankruptcy is a bar to these proceedings.   The debt upon which these are founded is provable in bankruptcy, and will be released by the debtor's discharge.   It will not be contended that he could now be arrested upon the appellant's execution.   And though whatever property has been fraudulently conveyed has passed to the assignee in bankruptcy for the benefit of the creditors, including the appellant, and is wholly out of the control of the debtor, yet, if convicted and imprisoned, he can never obtain his release.

GRAY, J.   The questions in this case relate to the application of the defendant, who had been arrested on execution in a civil action, to be admitted to take the poor debtors' oath.   The statutes of the Commonwealth provide that when, either before the arrest or pending the examination of the debtor, the creditor files certain charges of fraud in writing under oath, " the charges shall be considered in the nature of a suit at law, to which the defendant or debtor may plead that he is guilty or not guilty

and the magistrate shall thereupon hear and determine the same;" that from his judgment "either party may appeal to the superior court, in like manner as from the judgment of a justice of the peace in civil actions," entering into a recognizance to abide the result; that the trial in the court appealed to shall be by a jury, unless waived by consent; and that, if the debtor, after the making or filing of such charges, voluntarily makes default at any time appointed for the hearing, or upon a final trial is found guilty of any of them, he shall have no benefit of the proceedings to take the poor debtors' oath, and may be sentenced to imprisonment in the house of correction for not more than one year, or in jail for not more than six months. Gen. Sts. *c.* 124, §§ 31–34.

These proceedings are in their origin and their main features essentially of a civil and not a criminal nature. The charges of fraud are incidental to the application of the debtor to be relieved from imprisonment by taking the poor debtors' oath, and are set up by way of answer to that application. They are declared by the statute to be "in the nature of a suit at law;" and the appeal of either party from the judgment of the magistrate is to be taken "in like manner as in civil actions," and, in a county in which distinct terms are established for the transaction of civil and criminal business, must be entered at a civil term of the superior court. *Parker* v. *Page,* 4 Gray, 533.

The provision that, if the debtor is found guilty of any of the charges of fraud, he may be sentenced to imprisonment in the jail or house of correction, is not indeed an ordinary incident of a civil action, but partakes of the nature of a punishment for crime. It was therefore held in *Chamberlain* v. *Hoogs,* 1 Gray, 172, that the provisions of the practice act, prohibiting motions in arrest of judgment in civil actions for any cause existing before verdict and not affecting the jurisdiction of the court, did not apply to charges of fraud filed under the corresponding sections of the Revised Statutes. Although the express requirement of the Rev. Sts. *c.* 98, § 28, that "the said charges shall be fully, plainly and formally set forth in writing," has been omitted in the Genera Statutes, we should be slow to hold that

charges of fraud, upon which a defendant, making default or found guilty, might suffer imprisonment, need not be stated with such fulness, clearness and precision as to inform him of the nature and particulars of the transaction intended to be proved against him, and to enable him to prepare his defence. If that object is secured, they are not open to any legal or constitutional objection.

The Constitution of the Commonwealth declares that " no subject shall be held to answer for any crimes or offence until the same is fully and plainly, substantially and formally, described to him." Declaration of Rights, art. 12. Yet indictments in a very general form, aided by a bill of particulars, have been held sufficient in many cases. *Commonwealth* v. *Davis*, 11 Pick. 432. *Commonwealth* v. *Wood*, 4 Gray, 12, 13. *Commonwealth* v. *Sherman*, 13 Allen, 250, 251. In the first of these cases, Chief Justice Shaw said : " The great object of the Constitution was, to secure to every subject the benefit of learning before his trial the nature and particulars of the offence charged, not to direct any form of proceeding ; and if this is effectually done, it is immaterial how brief the form or how concise the language in which it is done." 11 Pick. 437, 438.

Tried by this test, we are of opinion that there is no such imperfection in the charges before us as to require their dismissal upon any of the objections made to them by the debtor.

The person making the charges in behalf of the creditor declares upon his oath not only that he believes and has reason to believe that the defendant did the acts alleged ; but upon the same oath " charges " that he did these acts. It would be difficult to accuse the defendant more directly, by any form of words. The accusation is quite as direct as in the ordinary form of an indictment, by which " the jurors upon their oath present," or of a complaint, by which the complainant " complains and on oath informs," that a certain offence has been committed.

The first charge contains a general statement (in the very form required by the Gen. Sts. *c.* 124, § 5, to warrant the arrest of the defendant) that since the debt was contracted and the cause of action accrued on which he was arrested he fraudulently con-

veyed, concealed and otherwise disposed of some part of his estate with a design to secure the same to his own use and to defraud his creditors. The subsequent charges are in the nature of specifications or particulars, defining the times, the property, and the grantees. The general charge, taken in connection with these specifications, clearly informs the defendant of the transactions upon which the creditor intends to rely. Though not in the form appropriate to indictments and complaints, they afford him equal information and security.

The objection that the charges contain no venue was not insisted on at the argument, and cannot be supported; for the fraudulent acts, sufficient to prevent a discharge of the debtor, may have been done out of the Commonwealth.

Some of the specifications are somewhat indefinite in the averment of time. But they all aver a time within the limitation of three years, prescribed in the Gen. Sts. *c.* 124, § 31. If the allegation of time were governed by the rules applied to indictments, it would not need to be proved as laid. And the defect may be cured by amendment, if necessary. The Rev. Sts. *c.* 98, § 30, provided that the court should have the same powers as to amendments and other incidents of the cause as in civil actions; and these powers may still be exercised under the more condensed provisions of the Gen. Sts. *c.* 124, § 31. In any view, the earlier specifications not being open to this objection, it affords no ground for dismissing the appeal.

It is contended in behalf of the debtor, that the provisions of the statute allowing the creditor to appeal from the decision of the magistrate in favor of the debtor, and to have him tried anew in the superior court on the charges of fraud, are unconstitutional. The best answer to this position is to be found by recurring once more to the nature and origin of these proceedings.

By the law of Massachusetts, as by the law of England, at the time of the adoption of the Constitution of the Commonwealth, a debtor committed on execution in a civil action could not be discharged without paying the debt, even on taking the poor debtors' oath, if his creditor would pay for his support in

prison. 3 Bl. Com. 416. Anc. Chart. 650. St. 1787, *c.* 29. The existing statutes do not give the creditor this election, but allow the debtor to obtain his discharge by taking the poor debtors' oath, unless he has been guilty of some fraud or wasteful misuse of his property. By applying to be admitted to take the poor debtors' oath, he assumes the risk of meeting such charges, and of being punished if found guilty thereof. It is only in answer to his own application, that the inquiry which may result in such punishment can take place. Although the proceedings are set in motion by himself, yet, as soon as they assume a shape which may produce such serious consequences to him, the allegations of the adverse party are required to be distinctly stated in writing and on oath, and from the judgment of the magistrate either party is allowed an appeal to a jury. If the debtor is found guilty of fraud by the magistrate, and appeals, he may be admitted to bail pending the appeal, and cannot in any event be imprisoned by way of punishment until convicted in the appellate court. If he is discharged by the magistrate, and the creditor appeals, the debtor cannot be imprisoned again until after the trial of the appeal or his own default. *Ingersoll* v. *Strong*, 9 Met. 447. *Collamore* v. *Fernald*, 3 Gray, 318. With all these precautions against oppression, we perceive no constitutional objection to permitting a debtor, voluntarily applying to take the poor debtors' oath, and failing in his application by reason of proof, upon specific charges, of his own fraud, to be punished by the sentence of the judge or magistrate who has heard all the circumstances; nor to allowing to the creditor, as well as the debtor, the opportunity of having the truth of these charges finally determined by a jury. It may be added that statutes like those now complained of have been in force in this Commonwealth for more than thirty years, and have been assumed to be valid in many cases above cited.

The remaining question arises on the plea in bar, setting up the pendency of proceedings in bankruptcy commenced since the entry of the appeal in the superior court. In support of this plea, the debtor relies on that provision of the bankrupt act,

which declares that "no bankrupt shall be liable to arrest during the pendency of the proceedings in bankruptcy in any civil action, unless the same is founded on some debt or claim from which his discharge in bankruptcy would not release him." U. S. St. 1867, *c.* 176, § 26; 14 U. S. Sts. at Large, 529.

But the arrest here contemplated is manifestly a new arrest for the benefit of the creditor. A similar provision in the English bankrupt acts has been held not to apply to a surrender of a debtor by his bail and subsequently charging him on execution, nor to a retaking by the jailer of a debtor who had escaped from custody. *Ex parte Gibbons,* 1 Atk. 238. *Payne* v. *Spencer,* 6 M. & S. 231. *Ex parte Johnson,* 14 Ves. 36. *Anderson* v. *Hampton,* 1 B. & Ald. 308. And this very section has been adjudged by the district court of the United States in this district not to extend to the case of a debtor who, before the commencement of bankruptcy proceedings, had been arrested on mesne process, given bail, and surrendered himself in discharge of his bail, and was charged on an *alias* execution taken out after his bankruptcy; upon the ground that this act of the creditor was not in law or fact a new arrest during the pendency of the proceedings, but only a lawful continuation of the old arrest according to the terms and for the purposes for which it was originally made. *In re Hazleton,* 2 Bankr. Reg. 12.

In the case at bar, if the debtor had been found guilty by the magistrate, he must have given bail or remained in custody. The fact that he was found not guilty by the magistrate, and was therefore permitted to go at large pending the appeal, does not make the taking of his body on execution, in case of his ultimate conviction, a new arrest. So far as the creditor is concerned, it is a restoring of the debtor to the confinement from which he had obtained a temporary relief pending the appeal. It is also an imprisonment by way of punishment for the fraud originally charged against him before the magistrate. In neither respect is it an arrest within the contemplation of that provision of the bankrupt act on which the debtor relies. There would be peculiar difficulty in allowing that provision to affect the determination of the debtor's right to be discharged by tak-

ing the poor debtors' oath, and of his liability to imprisonment by way of punishment for fraud, upon the proceedings in this case, which were commenced before the bankrupt act took effect. *Longis* v. *His Creditors*, 20 Louisiana Annual R. 15. *Day* v. *Bardwell*, 97 Mass. 246.

The motion to dismiss and the plea in bar must therefore both be overruled, and the                              *Case stand for trial.*