# C·A S E S

# SUPREME JUDICIAL COURT,

OF THE

# STATE OF MAINE.

---

C. W. HUSSEY *vs.* GEORGE O. DANFORTH and others.

Kennebec. Opinion October 28, 1884.[*]

*Bond. Poor debtor. Insolvency. R. S., c. 113, § 24. R. S., c. 70, § 51.*

A debtor, arrested on execution issued upon a judgment recovered upon a debt provable in insolvency, who, while in custody, files his petition in insolvency, and thereafter executes a bond in accordance with the provisions of R. S., c. 113, § 24, to obtain his release from arrest, is not relieved from the bond on account of his proceedings in insolvency, even though he obtain his discharge within the six months from the time of the arrest.

The arrest upon execution, having been made prior to the filing of the petition in insolvency, is not vacated by the institution of proceedings in insolvency; and the bond having been executed in accordance with the provisions of the statutes subsequently to the arrest and commencement of proceedings in insolvency, is not affected by any discharge which the debtor afterwards obtains.

Where the debtor delivers himself into the custody of the keeper of the jail to which he is liable to be committed under the execution, and is received into jail by the jailer within the six months named in the bond, the penalty of the bond is saved, although he is afterwards released by the jailer.

ON REPORT.

---

[*] Received by the Reporter January 13, 1885.

Debt against the principal and his sureties on a poor debtor's six months bond. The material facts are sufficiently stated in the opinion.

*Brown and Carver*, for the plaintiff, contended that there was not a complete surrender of the debtor in the manner contemplated by the statute — such a surrender as would give the creditor the right to a disclosure from him. The debtor went to the jailer with no copy of the execution or bond and induced the jailer to lock him up; then he showed the jailer his discharge in insolvency, and said: "You must look up the law for me, and if I am not released from that bond by my insolvency proceedings I will remain with you; but if I am, I demand my release." There the jailer was with this man, having no paper except the discharge in insolvency, demanding his right to go instead of expressing his willingness to surrender himself absolutely. The jailer with propriety did not regard it as a case requiring him to keep the man; he took counsel and concluded to let the man go. What was done, considering all the acts together, did not constitute a surrender and shows that the debtor did not intend to surrender.

*F. A. Waldron*, for the defendants, cited: *Ryan* v. *Watson*, 2 Maine, 382; *Pease* v. *Norton*, 6 Maine, 229; *Rollins* v. *Dow*, 24 Maine, 123; *White* v. *Estes*, 44 Maine, 21.

FOSTER, J. The defendant, Danforth, was arrested September 18, 1882, on execution; the next day, September 19, filed his petition in insolvency; and two days later, on the twenty-first of September, gave the bond in suit to procure his release from arrest. He obtained his discharge from the court of insolvency, March 14, 1883.

The regularity of the proceedings in the court in which judgment was rendered and execution issued, as well as of those in the court of insolvency, and that the bond is a regular statute bond duly executed, is admitted.

The defense sets up, (1) that the debt, represented by the judgment and execution on which the defendant was taken into

custody, originated since the insolvent law of 1878 went into effect, and although the arrest on the execution was legal, the commencement of proceedings in insolvency by the debtor during the time he was in custody, and before the bond in suit was given, vacated the arrest, legally entitled him to a release from the custody of the officer, and that the bond which he afterwards gave for his release was executed under duress ; (2) that the debt on which the execution was obtained has been discharged by proceedings in insolvency, and that the bond, although executed after the arrest and after the filing of the petition in insolvency, must fall with the debt ; (3) that he has performed one of the conditions named in said bond by delivering himself into the custody of the keeper of the jail to which he was liable to be committed under said execution.

I. Upon the first and second propositions set up in defense, the defendant cannot prevail. To what extent the privilege of exemption from arrest may be lawfully claimed by a debtor who has been legally arrested on execution prior to filing his petition in insolvency, so far as we have been able to learn, has never been determined by any decision of the court in this State.

By the common law, the creditor had the absolute right to arrest his debtor upon an execution for debt. When the debtor was committed on execution in a civil action, he could not be discharged without paying the debt, even on taking the poor debtor's oath, if his creditor would pay for his support in jail. 3 Bl. Com. 416 ; Anc. Chart. 650.

While the common law was modified by statutory enactment as early as 1787, c. 29, in the commonwealth of Massachusetts, in relation to discharge from imprisonment, yet to the present time, under the various changes which the law has undergone, the debtor has always in this State been liable to arrest upon execution. As the statutes now stand, provision is made for the arrest and imprisonment upon execution of the debtor for the purpose of obtaining a discovery of his property wherewith to satisfy the execution on which he is arrested. Provision is likewise made whereby he may obtain his release by complying with certain conditions,—in this day generally well understood by

those who, with sincere motives, have occasion to resort for protection thereto, as by those who thereby have like occasion to lament the loss of honest debts. One of those conditions is in executing a bond like the one in suit.

This debtor was arrested in accordance with the provisions of law, and while in custody, filed his voluntary petition in insolvency. Was he thereby entitled to release from arrest? We think not.

So much of § 47 of the insolvent act of 1878 (R. S., c. 70, § 51) as relates to this question provides that . . . "no debtor against whom a warrant of insolvency has been issued shall be liable to arrest on mesne process or execution, where the claim was provable in insolvency during the pendency of the insolvency proceedings, unless the same shall be unreasonably protracted by the fault or neglect of such debtor."

This provision is very nearly identical with the general bankrupt act of 1867, § 26, (U. S. R. S., § 5107) which was in force at the time of the enactment of the present insolvent law. The language of both, in the provision referred to, taken in connection with the objects to be attained, possesses that degree of similarity by which a construction given to one would equally apply to the other. And it has been decided by other courts, that this section of the general bankrupt law would not relieve from arrest one who was in lawful custody when the petition was filed, though for a debt provable and dischargable under the act; that it applied only to arrests that were made after the commencement of proceedings in bankruptcy; and if the arrest had been made before that time, the bankrupt was not entitled to a release by virtue of any provision of the bankrupt law. Bump, (7th ed.) c. X, pp. 166, 606; Hamlin's Insolvent Law, 70; In re Walker, 1 Lowell, 222; In re Devoe, id. 251; Hazelton, v. Valentine, id. 270; Minon v. Van Nostrand, id. 458; Stockwell v. Silloway, 100 Mass. 298. And see, Storer v. Haynes, 67 Maine, 422; Wilmarth v. Burt, 7 Met. 257, 261.

The arrest contemplated by the statute, and to which no debtor " shall be liable," is manifestly a new arrest for the benefit of the creditor, as was held by GRAY, J., in Stockwell v. Silloway,

*supra*, where he says : " And this very section has been adjudged by the district court of the United States in this district not to extend to the case of a debtor who, before the commencement of bankruptcy proceedings, had been arrested on mesne process, giving bail, and surrendered himself in discharge of his bail, and was charged on an *alias* execution taken out after his bankruptcy ; upon the ground that this act of the creditor was not in law or fact a new arrest during the pendency of the proceedings, but only a lawful continuation of the old arrest according to the terms and for the purposes for which it was originally made."

In the case at bar the officer was in the faithful performance of his duty, at the time the arrest was made, obeying the mandate of a court whose jurisdiction in relation to the matter was unquestioned, and in the execution of that duty he was bound only to see that the process, which he was called upon to execute, was in due and regular form, emanating from a court having jurisdiction of the subject. He was justified in obeying his precept, and it is highly necessary to the due, prompt, faithful and energetic execution of the mandates of the law that he should be thus protected. No action of trespass could lie against him in the faithful execution of that duty while thus obeying a precept regular upon its face. *Wilmarth* v. *Burt*, 7 Met. 257 ; *Clarke* v. *May*, 2 Gray, 413 ; *Conner* v. *Long*, 104 U. S. 238.

II. The bond in suit having been executed and delivered after the debtor had instituted proceedings in insolvency, was properly given, and is not affected by any discharge which he has since obtained. *Corliss* v. *Shepherd*, 28 Maine, 551, 552. The arrest having been legally made, and the bond given while the debtor was in the custody of the officer, in accordance with the statutes of this State, the rights of the creditor for further proceedings for the purpose of obtaining a discovery of the debtor's property had attached before the filing of his petition, and that provision of the insolvent law relating to exemption from arrest does not apply to the case at bar, whatever may have been the effect of the debtor's discharge upon the debt represented in the execution. It is a new contract entered into by the parties defendant, and in accordance with the provisions of the statute, after the com-

mencement of insolvency proceedings, and can not therefore be affected by those proceedings. Treating the debt as effectually discharged, and the remedy of the creditor, existing at the time the discharge was granted to recover his debt by suit as forever barred, the debt can not be said to be paid, but discharged. The moral obligation of the insolvent to pay it remains. It is due in conscience although discharged in law, and this moral obligation, uniting with a subsequent promise in writing by the insolvent to pay the debt would form a sufficient consideration, even though the promise be not under seal, and would support a right of action upon such promise. *Dusenbury* v. *Hoyt*, 53 N. Y. 523 ; *Corliss* v. *Shepherd*, 28 Maine, 552 ; *Otis* v. *Gazlin*, 31 Maine, 568.

III. But this bond is not a promise to pay the debt absolutely. It is subject to three conditions, defeasible upon the performance of either, and the only remaining inquiry relates to the question of performance.

These conditions are in the alternative, and the debtor must show that he has performed one of them within the six months, if he would expect protection to himself and his sureties. Here the defense, assuming the burden, claims performance of the last condition by " delivering himself into the custody of the keeper of the jail," March 14, 1883. If he has done that he has performed what he obligated himself to do, and his defense is sustained. *Rollins* v. *Dow*, 24 Maine, 124 ; *White* v. *Estes*, 44 Maine, 21 ; *Jones* v. *Emerson*, 71 Maine, 405.

We are satisfied from the testimony as reported that the debtor delivered himself into the custody of the jailer within the time.

His purpose was, as he testifies, to release his bondsmen. He says he presented himself to the jailer sometime in the forenoon, was locked in, but " did not remain in jail but a little while, an hour or so ; I could not really tell whether it was afternoon when I was released; I don't remember the time ; the jailer released me upon the presentation of that paper ; he put me into the jail and turned the key, and I paid him for it." " I paid the turnkey's fee in going in and coming out; he asked me forty cents and I gave him half a dollar." The testimony of the debtor

is corroborated by that of the jailer himself who says he "could not give the hour he came there; sometime in the forenoon; he was discharged sometime in the afternoon." The jailer's entry upon the jail register, made at the time, confirms the statement of the witnesses; it is this: "Surrendered to jail, March 14, 1883, to save conditions of a six months' poor debtor's bond, dated September 21, A. D. 1882. Released March 14, 1883, on presenting discharge from court of insolvency."

This evidence is not only uncontradicted, but is supported by the other facts in the case.

The plaintiff, however, interposes objections which relate to the validity of the surrender. It is claimed that the debtor, as soon as he delivered himself up and was committed, exhibited his discharge in insolvency and demanded his release; that he produced no copy of the bond or execution when he surrendered himself to the jailer; and that inasmuch as his intention was to be released upon his discharge in insolvency when he entered, it was not such a delivery into custody as is contemplated by the statutes.

But the conditions of the bond relate to the acts rather than the intention of the party. If the debtor in fact delivered himself into the custody of the jailer, whatever may have been his intention or expectation as to his release, or as to the manner in which it was to be effected, we should not be warranted in saying that the intention should overrule the act and that he had not complied with the condition named in the bond.

Moreover, upon this question the testimony standing uncontradicted shows that his intention in delivering himself up was to comply with one of the conditions of the bond and release his sureties. He so informed the jailer; and the paper which he handed him before he was committed sets forth the amount of the judgment, the court at which it was rendered, date of the execution, the arrest, the date of the bond, and the object of delivering himself into custody. This was accepted and filed by the jailer.

It has been the practice for the debtor to deliver to the jailer, when he surrenders himself into custody, either an attested copy of the execution and return thereon, or of the bond, and he

would not be obliged to receive him without one or the other, but there is no statute requiring these as prerequisites, as in the case of bail surrendering their principal before a trial justice, and in commitment after judgment in such cases, (R. S., c. 85, § 15) or, as when the delinquent tax-payer is committed to jail for non-payment of his tax (R. S., c. 6, § 171) ; the production of this attested copy of the execution and return, or of the bond, may be waived, and if the jailer receives the debtor without either, or upon the production of such data as may be satisfactory to him, the delivery is undoubtedly sufficient. *Jones* v. *Emerson*, 71 Maine, 407.

Having submitted himself to the control of the jailer, and gone into actual confinement, as the evidence shows, he had done all that was in his power, and the penalty of the bond was saved. He had done what was incumbent upon him to do, and whether the jailer upon any representations of the debtor or otherwise, after his custody had commenced, neglected the performance of his duties, or, with no intention of neglect on his part, improperly discharged the debtor, is not before us for our consideration. *Rollins* v. *Dow*, 24 Maine, 124 ; *White* v. *Estes*, 44 Maine, 24 ; *Ryan* v. *Watson*, 2 Maine, 382.

The learned counsel for the plaintiff has called our attention to the case of *Jones* v. *Emerson*, *supra.* But it will be noticed that the facts in that case differ considerably from those here. There, all that the debtor did was to " offer to deliver himself to the jailer," and asked for information, but was not received into custody or committed; here, he not only offered himself, but was actually received into custody and committed to jail, and after remaining therein for some time was released by the jailer who received his fees for commitment and release.

In accordance with the stipulation in the report the entry should be,

*Judgment for defendants.*

PETERS, C. J., WALTON, DANFORTH, LIBBEY and EMERY, JJ., concurred.