## Illinois Central R. R. Co. v. Laura Atwell, Adm'x.

1. NEGLIGENCE—*What is Not, in a Servant Ordered to Remove "Quick" a Dangerous Obstruction.*—It is not negligence in a servant obeying a peremptory order to remove "quick" a dangerous obstruction from in front of a rapidly moving train, to attempt to cross the track on a dark foggy morning, to obey such order. Where there is but a fraction of a minute in which to resolve and act, or action will come too late, it would be unreasonable to require a deliberate judgment from one in a position to afford relief.

**Action on the Case.**—Death from negligent act. Appeal from the Circuit Court of Jackson County; the Hon. OLIVER A. HARKER, Judge, presiding. Heard in this court at the August term, 1901. Affirmed. Opinion filed March 3, 1902.

Suit by Laura Atwell, widow and administratrix of George Atwell, deceased, against appellant, to recover damages for causing the death of her husband. George Atwell, the deceased, was a section hand on appellant's railroad at Carbondale, working under Martin Meloday, who was his section foreman. With him in the section crew were James Smiley, Samuel Marlow, William Rice, George W. Short and Harry Meloday. On February 8, 1901, about 3:30 in the morning, these men were called out by their section foreman to replace a broken switch in appellant's yards just north of Carbondale. Getting on their hand car in Carbondale, under their foreman's order, they went first to the broken switch. From there they went some five hundred feet further north to the tool house and got their tools. On their way back they stopped opposite the coal chute to get a new switch point—a steel rail fifteen feet long and weighing 260 pounds. This switch point lay about forty feet east of the main track. By the order of their foreman, they left the hand car on the main track and went to where the switch point was. It was then about 4:20 A. M. and was dark and foggy. The coal chute and other obstructions interfered with the view toward the south. Smiley, Marlow and Harry Meloday, at the end of the switch point nearest the track, and Rice,

Short and Atwell at the end farthest from the track, picked up the switch point and started to put it on the hand car to be hauled south to the place where it was to be used. When they had gone a short distance toward the hand car, Martin Meloday, their foreman, called out, " Come, boys, take the car off quick ; there is a train coming." Dropping the switch point in obedience to this order, they all ran toward the car. Smiley, Marlow and Harry Meloday being the nearest the track, arrived there first, crossed it, and with the foreman, taking hold of the car, commenced to remove it. Atwell, who was the foremost of the other three, at the rear of the switch point, reached the track in advance of Short and Rice. Stepping one foot over the rail and stooping down to assist in removing the car, he was struck by the north-bound passenger train, running thirty-five miles an hour, and was thrown over thirty feet and instantly killed. The train was over an hour late.

The declaration contains two counts. The first count charges that while the deceased, with other laborers, was attempting to remove a hand car from the track, under the orders of the foreman, and while exercising due care, that the defendant carelessly and negligently drove its locomotive against him and killed him.

The second count charges that the defendant did not regard its duty and did not use due care for the safety of its employes, but on the contrary, while the said George Atwell, who was there employed as a section laborer by the defendant, and was in the discharge of his duties as such section laborer under the direction and control of one Martin Meloday, then and there vice-principal of defendant, and while he, the said George Atwell, together with other section laborers, was engaged in lifting and carrying a heavy switch point from the right of way of defendant, about forty feet to a hand car of defendant on the said railroad track, about the hour of four o'clock in the morning, the said Atwell, together with his said fellow-laborers, was negligently, improperly and suddenly commanded by the said foreman, Meloday, to " run and get the hand car off the track."

And plaintiff avers that the said Atwell, in obedience to the orders of the said Meloday, so improperly and negligently given as aforesaid, together with his fellow-laborers, immediately ran to the said hand car, and while he and his fellow-laborers were attempting to remove it from the said railroad track, and while he was in the exercise of reasonable care for his own safety, he, the said Atwell, was with force and violence struck upon the head by a locomotive engine of defendant, then and there pulling a train of passenger cars upon the said railroad, and which was then and there under the management of divers then servants of defendant, and was then and there running at a high rate of speed, and thereby the said George Atwell was then and there thrown with great force and violence to and upon the ground there, and was thereby then and there killed.

The defendant pleaded the general issue. Judgment and verdict for plaintiff for $5,000.

The evidence shows that Atwell was an able-bodied man, of middle age, of good habits, the head of a family and the husband of plaintiff.

William H. Green, attorney for appellant; J. M. Dickinson, of counsel.

William A. Schwartz and Andrew S. Caldwell, attorneys for appellee.

Mr. Presiding Justice Worthington delivered the opinion of the court.

Counsel for appellant in their brief rely upon two propositions which they endeavor to establish. These are, first, that the deceased was not in the exercise of due care, and second, that appellant was not guilty of the negligence charged. Other alleged errors assigned, not involving these propositions, are not discussed and may therefore be considered as waived. An instruction asked by appellant to find defendant not guilty was refused. In this there was no error. As we view the undisputed evidence in the case, it would have been error to give it. No witnesses

were introduced by appellant. The facts in the case are peculiar and clearly prove negligence of a gross character in the foreman of the switching crew. He knew, or ought to have known, that an overdue passenger train was liable at any moment to come north over the track on which he directed the hand car to be placed and used. It was suggested to him by Smiley, one of his crew, that the hand car be left at the cinder pit. To the question put to him, "Now, at the time when you first stopped, when you got off to look at the broken switch, tell the jury if you offered any suggestion as to leaving the car there at the broken switch and going up and carrying the switch point and tools down to it?" he answered: "I told them I thought we had better leave the hand car and go up and pack down the tools, but Mr. Meloday had us take the car up there."

Short, another member of the crew, testifies: "Smiley said, 'Boys, I believe it would be better to pack that switch point down here, and the tools, than it would be to take the hand car up there.' Mr. Meloday says, 'Just take the hand car up there.' We knew that was law and gospel and we just did what he told us to."

Hearing this suggestion, and with the knowledge of the risk incurred, he ordered the car to be taken to the tool house, and from there to the place on the track where it was left when the crew were sent for the switch point. After it had been selected and the crew directed to bring it to the hand car, the foreman went ahead of them to the track and was in effect a lookout for them.

When they were carrying the switch point, Smiley testifies that "When we had the switch point in our hands we could not see south because the coal chute would be between us and the coming train."

The morning was dark and foggy. When within a short distance from the hand car, where the foreman had gone, he called to the crew, as Short testifies, and he is corroborated by others of the crew, "Boys, come help me get the hand car off quick; there's the train coming." They dropped the switch point and obeyed orders. The three

at the end of the switch point nearest the car got to the track, crossed it, and Smiley testifies: "We got there in time to get one end off the track and that was all. We had to get off ourselves then." Atwell having fifteen feet farther to come, that being the length of the switch point, reached the track a few seconds later. In the haste, darkness and excitement, Short appears to have been the only one of the crew that saw what Atwell, the deceased, did. In fact, the others of the crew did not know that any one was hurt, and Short, at the instant, thought that it was Marlow. Short describes the scene as follows:

"About the time we were hunting the switch point, Mr. Meloday left the hand car and came down on the east side of the incline of the bank. He says, 'Boys, get a right new switch point.' Mr. Smiley says, 'That's the kind we are hunting for.' And then, I think, Mr. Meloday ran back to the hand car and says, 'Boys, come help me get the hand car off, quick; there's the train coming.' Marlow, young Meloday and Smiley were at the west end, the end of the switch point nearest the track, and Atwell, myself and Rice was at the east end. We dropped the rail and went. The ones in front of us, nearest to the track, succeeded in crossing the track. But Atwell and me and Rice never got across the track. Atwell, it proved to be, passed me to get to the hand car. I seen the train was so close I had no time to cross the track, and some one passed me; I thought it was young Meloday, but it was Atwell. I says, 'Look out, there,' and he was kind of running in a stooping position. But he just sets his right foot over the east rail of the main line to take hold of the hand car, and when he arrived to where he could grab it, the train struck him. He had his face to the west. If he had heard me holler—he didn't heed it, or look, that I could tell. I says, 'Boys, who is hurt?' Young Meloday didn't think any one was hurt. I knew some one was hurt; I seen the train strike some one, but I didn't know who it was. I says to young Meloday, 'There's some one hurt, all the same.' I says, 'It's Marlow,' for I hadn't seen him come up yet. By this time Marlow climbed up over the bank. I knew then it was Atwell."

This graphic description by the witness Short, brings the scene and the emergency and the demand for instant action vividly to view. The lives of the passengers and crew of

the coming train were in immediate peril. The foreman
calls to his crew to drop everything and help him remove
the obstruction. They hasten to do so. It was no time for
deliberation or the exercise of judgment. Atwell obeyed
orders to help remove the dangerous obstruction, and was
killed while so doing. He was attempting to assist in avert-
ing an impending collision which his foreman's lack of fore-
sight had made inevitable unless instantly avoided. The
fact that none of his fellow-labors saw Atwell when he was
struck, except Short, although they were all close to him,
is significant as showing how completely their attention was
centered in trying to remove the hand car.

Smiley, who crossed the track first and aided in moving
the hand car part way off the track, and who let go just in
time to save himself, did not see Atwell, who must have
been directly opposite him. He testifies that " Atwell could
not see the approaching train as early as I saw it, because
I was the first one to the car."

Marlow testifies, " All that kept me from getting killed
was letting go and jumping back. I didn't hear the engineer
do anything to warn." He also testifies the foreman has
authority to hire and discharge.

Rice testifies:

" Q. How quickly was this done—from the time this
order was given until the car was struck ? A. It was done
right immediately.

Q. What did Atwell do when you ran up there ? A.
They were all ahead of me. He ran past me; I could not
tell if it was him or not. Every fellow did his best. *
* * 'He was killed by the train at the time the hand car
was struck."

Due care, ordinary care and reasonable care, are relative
terms, depending largely upon the circumstances of the case.
What would be negligence in attempting to cross a track
on a clear day, in front of a train, would not be negligence
on a dark, foggy morning, in a servant obeying a peremp-
tory order to remove " quick " a dangerous obstruction
from a rapidly approaching passenger train. It is said in
Penn. Co. v. Langendorf, 48 Ohio St., Vol. 13, L. R. A. 190,

in a case requiring prompt action, "There was but the fraction of a minute in which to resolve and act, or action would come too late. Under these circumstances it would be unreasonable to require a deliberate judgment from one in a position to afford a relief."

To the same effect are: Buel v. N. Y. C. R. R., 31 N. Y. 314; Gayner v. Old Colony R. R. Co., 100 Mass. 287; Louisville N. A. & C. R. Co. v. Lucas, 6 L. R. A. 195.

In view of all the circumstances in evidence in this case, we think the jury was warranted in finding that appellant, through the acts of the foreman of its switching crew, was guilty of negligence, and that the foreman of the switching crew was at the time a vice-principal, for whose negligence appellant is liable. We further think that the jury was warranted in finding that the deceased was not guilty of contributory negligence.

Holding these conclusions and finding no reversible error in the record, the judgment of the Circuit Court is affirmed.