### COMMONWEALTH *vs.* THOMAS E. PENTZ.

Middlesex.   November 13, 1923, January 11, 1924. — February 25, 1924.

Present: RUGG, C.J., CROSBY, PIERCE, & CARROLL, JJ.

*Motor Vehicle*, Unlawful operation.   *Constitutional Law*, Due process of law, Equal protection of laws, Police power.   *Pleading, Criminal*, Complaint. *Way*, Public: motor vehicles.   *Law of the Road.*

The scope and effect of art. 12 of the Declaration of Rights of the Constitution of this Commonwealth, as bearing upon criminal pleading, is that the offence charged in an indictment or complaint must be set out with such particularity of allegation as may be of service in enabling the accused to understand the charge and to prepare his defence.

Statutes which create crimes must be definite in specifying the conduct which is commanded or prohibited.

G. L. c. 90, § 24, making subject to punishment " Whoever upon any way
. . . operates a motor vehicle so that the lives or safety of the public might
be endangered," fulfils the requirements of art. 12 of the Declaration of
Rights of the Constitution of the Commonwealth and of the Fourteenth
Amendment to the Constitution of the United States, and is constitutional.

An indictment, charging that the defendant at a specified time and place
upon a way " did operate an automobile so that the lives or safety of the
public might be endangered," with certainty and precision defines the
crime described in G. L. c. 90, § 24.

Section 24 of G. L. c. 90, belongs to that class of statutes where the General
Court, legislating for the common welfare, has put the burden upon the in-
dividual of ascertaining at his peril whether his conduct is within the sweep
of a criminal provision.

Moral turpitude or purity of motive by which an act, charged in an indictment
to be in violation of G. L. c. 90, § 24, was prompted, knowledge or ignorance
of its criminal character, and the question, whether or not the act was negli-
gent in character, are immaterial in determining whether or not the defend-
ant was guilty of the offence charged in the indictment.

At the trial of an indictment charging a violation of G. L. c. 90, § 24, it is proper
to refuse requests by the defendant for instructions to the effect that, for
the defendant to be found guilty, there must be found to have been on the
part of the defendant an intent to endanger the lives and safety of the
public, or wanton, reckless or foolhardy conduct, or deliberate disregard
of the safety of others, or gross negligence; and also to refuse a request that,
if the driver of the vehicle which collided with the defendant's automobile
was himself reckless or negligent, that fact should be considered on the
question of the defendant's due care.

Section 24 of G. L. c. 90 is not arbitrary nor unreasonable and is adapted to
the accomplishment of a permissible result.

At the trial of an indictment under G. L. c. 90, § 24, charging the defendant
with operating an automobile so that the lives or safety of the public might
be endangered, there was evidence tending to show that the defendant was
proceeding on a roadway on the right hand side of a street car reservation
which was given wholly to travel in the direction in which he was going;
that he was on the left hand side of the roadway next to the reservation;
that a team was approaching the roadway on a street from the defendant's
left and, when the defendant first saw it, the rear wheels of the wagon were
on the street car tracks in the reservation and the team was eighteen or
twenty feet away from him, and that the defendant's automobile struck
the horse.   *Held*, that G. L. c. 89, § 8, was not applicable, and it was proper
to refuse a request of the defendant for a ruling that, if both vehicles reached
the intersection of streets at the same time, the defendant had the right of
way.

INDICTMENT, found and returned on February 10, 1922,
charging that the defendant did operate an automobile so
that the lives or safety of the public might be endangered.

The defendant moved to quash the indictment on the
grounds that it did not define any crime with the certainty

and precision required by (1) the Constitution of this Commonwealth and (2) the Constitution of the United States. The motion was heard by *Flynn*, J., and was denied.

Thereafter, the defendant filed a motion for particulars and in response thereto the Commonwealth filed a bill specifying " that the manner in which the defendant operated said automobile, so that the lives or safety of the public might be in danger, consisted of the operation of said automobile at a reckless and unsafe rate of speed; in failing to give proper warning to other vehicles upon the highway; in failing to keep a proper lookout for other vehicles at an intersecting way; and in the operation of said vehicle at an improper rate of speed considering the condition of said automobile; and in the operation of said automobile while its brakes were in a defective condition."

The indictment then was tried before *J. F. Brown*, J. Material evidence is described in the opinion. At the close of the evidence, the defendant asked for the following rulings:

" 1. The defendant cannot be found guilty unless the jury are satisfied beyond a reasonable doubt that he intended to operate his machine in such a manner as would endanger the lives or safety of the public.

" 2. The defendant cannot be found guilty unless the jury are satisfied beyond a reasonable doubt that the defendant operated his machine in such a wanton or reckless manner as to endanger the lives or safety of the public.

" 3. In order for the jury to find that the defendant was wanton or reckless they must be satisfied beyond a reasonable doubt that he operated his machine with a deliberate disregard for the safety of others upon the highway or in a foolhardy manner.

" 4. The defendant cannot be found guilty unless the jury are satisfied beyond a reasonable doubt that the defendant operated his machine in such a grossly negligent manner as to endanger the lives or safety of the public.

" 5. If the jury find that the defendant was negligent in his operation of his machine but that this negligence on his part was not gross, he cannot be found guilty.

" 6. If the driver of the vehicle which collided with the

defendant's automobile was himself negligent or reckless, this fact should be considered by the jury upon the question of the defendant's care.

" 7. If both vehicles reached the intersection of Riverside Avenue and the Fellsway at the same time, the defendant had the right of way over the horse and wagon."

The defendant was found guilty and alleged exceptions.

G. L. c. 89, § 8, reads as follows: " Every driver of a motor or other vehicle approaching an intersecting way, as defined in section one of chapter ninety, shall grant the right of way, at the point of intersection to vehicles approaching from his right, provided that such vehicles are arriving at the point of intersection at approximately the same instant; except that whenever traffic officers are standing at such intersection they shall have the right to regulate traffic thereat."

G. L. c. 90, § 24, reads as follows: " Whoever upon any way operates a motor vehicle recklessly, or while under the influence of intoxicating liquor, or so that the lives or safety of the public might be endangered, or upon a bet or wager or in a race, or whoever operates a motor vehicle for the purpose of making a record and thereby violates any provision of section seventeen or any regulation under section eighteen, or whoever without stopping and making known his name, residence and the number of his motor vehicle goes away after knowingly colliding with or otherwise causing injury to any other vehicle or property, or whoever uses a motor vehicle without authority, shall be punished by a fine of not less than twenty nor more than two hundred dollars or by imprisonment for not less than two weeks nor more than two years, or both; except that for a second offence of operating a motor vehicle while under the influence of intoxicating liquor, a person shall be punished by imprisonment for not less than one month nor more than two years. Any person who operates a motor vehicle upon any way and who, without stopping and making known his name, residence and the number of his motor vehicle, goes away after knowingly colliding with or otherwise causing injury to any person, shall be punished by imprisonment for not less than one month nor more than two years. A conviction of a violation

of this section shall be reported forthwith by the court or magistrate to the registrar, who may in any event and shall, unless the court or magistrate recommends otherwise, revoke immediately the license of the person so convicted, and no appeal from the judgment shall operate to stay the revocation of the license. If it appears by the records of the registrar that the person so convicted is the owner of a motor vehicle or has exclusive control of any motor vehicle as a manufacturer or dealer, the registrar may revoke the certificate of registration of any or all motor vehicles so owned or exclusively controlled. The registrar in his discretion may issue a new license to any person acquitted in the appellate court, or after an investigation or upon hearing may issue a new license to a person convicted in any court; provided, that no new license shall be issued by the registrar to any person convicted of operating a motor vehicle while under the influence of intoxicating liquor until one year after the date of final conviction, if for a first offence, or five years after any subsequent conviction, and to any person convicted of violating any other provision of this section until sixty days after the date of final conviction, if for a first offence, or one year after the date of any subsequent conviction. The prosecution for the violation of any of the provisions of this section, if a second offence, shall not, unless the interests of justice require such disposition, be placed on file or otherwise disposed of except by trial, judgment and sentence according to the regular course of criminal proceedings. It shall be otherwise disposed of only on motion in writing, stating specifically the reasons therefor, and verified by affidavit if facts are relied on. If the court or magistrate certifies in writing that he is satisfied that the reasons relied upon are sufficient and that the interests of justice require the allowance of the motion, the motion shall be allowed, and the certificate shall be filed in the case. A copy of the motion and certificate shall be sent by the court or magistrate forthwith to the registrar."

*A. S. Allen,* for the defendant.

*A. K. Reading,* District Attorney, & *G. W. Pearson,* Assistant District Attorney, for the Commonwealth, submitted a brief.

RUGG, C.J.   This is an indictment charging that the defendant at a specified time and place upon a way " did operate an automobile so that the lives or safety of the public might be endangered." It follows the essential words of G. L. c. 90, § 24. The defendant seasonably filed a motion to quash the indictment on the grounds that it did not define any crime with the certainty and precision required by the Constitution either of this Commonwealth or of the United States.

The indictment embodies in substance the words of the statute. Commonly that is sufficient as matter of criminal pleading. *Commonwealth* v. *Dyer*, 128 Mass. 70. *Commonwealth* v. *Ellis*, 207 Mass. 572, 575. *Commonwealth* v. *Allison*, 227 Mass. 57, 61. *Commonwealth* v. *Dyer*, 243 Mass. 472, 491.

The argument of the defendant strikes at the validity of the statute itself. His contention is that the statute establishes no standard of conduct sufficiently definite to inform a person charged with its violation of the nature and extent of his offence, and affords no ascertainable test of guilt, and hence is a nullity.

The statute has been assumed to be valid in *Commonwealth* v. *Guillemette*, 243 Mass. 346. A similar one was treated as not open to objection in *Commonwealth* v. *Cassidy*, 209 Mass. 24. Constitutionality of the statutes was not raised or discussed in either of those decisions. The question is considered now without reference to them.

It is provided by art. 12 of the Declaration of Rights of the Constitution of this Commonwealth that " No subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him; . . . And no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land." The history and immense significance of this article as a safeguard of liberty and a shield against oppression are set forth by Chief Justice Shaw in *Jones* v. *Robbins*, 8 Gray, 329, 337–350.

It would be superfluous to restate or summarize what there was said. This article binds not only the grand jury and all others in drafting indictments; it is a mandate confining as well the General Court in framing laws which may become the source of indictments. *Fisher* v. *McGirr*, 1 Gray, 1, 42, 43. *Commonwealth* v. *Anthes*, 5 Gray, 185, 228–232, 251. *Opinion of the Justices*, 232 Mass. 601. *Lebowitch, petitioner*, 235 Mass. 357. The scope and effect of this article as matter of criminal pleading is that the offence must be set out with such particularity of allegation as may be of service in enabling the accused to understand the charge and to prepare his defence. *Commonwealth* v. *Robertson*, 162 Mass. 90, 96. *Commonwealth* v. *Coleman*, 184 Mass. 198, 203. *Stockwell* v. *Silloway*, 100 Mass. 287, 295. *Frost's Case*, 127 Mass. 550, 554. *Commonwealth* v. *Chiovaro*, 129 Mass. 489, 495. *Commonwealth* v. *Jordan*, 207 Mass. 259, 266. *Commonwealth* v. *Cornell*, 213 Mass. 135.

Statutes which create crimes must be definite in specifying conduct which is commanded or prohibited. They must afford some comprehensible guide, rule or information as to what must be done or what must be avoided to the end that the ordinary member of society may know how to comply with its requirements. " Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid." *United States* v. *Brewer*, 139 U. S. 278, 288. *Commonwealth* v. *Badger*, 243 Mass. 137. *Commonwealth* v. *Atlas*, 244 Mass. 78, 82.

In the light of these principles the statute here assailed must be examined. By its terms " Whoever upon any way . . . operates a motor vehicle so that the lives or safety of the public might be endangered " is made subject to punishment. The operation of an automobile upon a way is a clearly defined act, susceptible of being easily understood. Its operation so as not to endanger the lives or safety of the public is the description of a fact. While it may not be easy to formulate in words a comprehensive definition of that fact applicable to all cases, it is not difficult to compre-

hend with some approach to accuracy the thought conveyed by the description of that fact.   Negligence of varying degrees has been made the basis of indictment under numerous statutes.   *Brooks* v. *Fitchburg & Leominster Street Railway,* 200 Mass. 8.   Doubtless many indictments have been framed and much money paid as penalties under such statutes.   See, for example, *Commonwealth* v. *Boston & Lowell Railroad,* 134 Mass. 211; *Commonwealth* v. *Eastern Railroad,* 5 Gray, 473; *Commonwealth* v. *Boston & Albany Railroad,* 121 Mass. 36.   Yet it has not been infrequently said by other courts that negligence and gross negligence are not capable of accurate definition.   See *Massaletti* v. *Fitzroy,* 228 Mass. 487, 494–498, and *Altman* v. *Aronson,* 231 Mass. 588, at page 591.   It seems impossible to draw a sound line of distinction between causing injury by negligence or by gross negligence on the one hand, and operating an automobile on a way so as to endanger the lives and safety of the public on the other hand, and say that the one is specific and certain, and the other vague and indefinite. To endanger the lives and safety of the public by the operation of an automobile on a public way is not an intangible and shadowy act.   It has specific relation to possible contact with human beings.   The objections to the statute are disposed of by what was said in *Nash* v. *United States,* 229 U. S. 373, at pages 376, 377: " it is said that the crime thus defined by the statute contains in its definition an element of degree as to which estimates may differ, with the result that a man might find himself in prison because his honest judgment did not anticipate that of a jury of less competent men.   The kindred proposition that ' the criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable.   There must be some definiteness and certainty,' is cited from the late Mr. Justice Brewer sitting in the Circuit Court.   *Tozer* v. *United States,* 52 Fed. Rep. 917, 919. . . . the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of

death. ' An act causing death may be murder, man-slaughter, or misadventure according to the degree of danger attending it ' by common experience in the circumstances known to the actor. ' The very meaning of the fiction of implied malice in such cases at common law was, that a man might have to answer with his life for consequences which he neither intended nor foresaw.' *Commonwealth* v. *Pierce*, 138 Massachusetts, 165, 178. *Commonwealth* v. *Chance*, 174 Massachusetts, 245, 252. ' The criterion in such cases is to examine whether common social duty would, under the circumstances, have suggested a more circumspect conduct.' 1 East P. C. 262. If a man should kill another by driving an automobile furiously into a crowd he might be convicted of murder however little he expected the result. See *Reg.* v. *Desmond,* and other illustrations in Stephen, Dig. Crim. Law, Art 223, 1st ed., p. 146. If he did no more than drive negligently through a street he might get off with manslaughter or less. *Reg.* v. *Swindall,* 2 C. & K. 230; *Rex* v. *Burton,* 1 Strange, 481. And in the last case he might be held although he himself thought that he was acting as a prudent man should. See *The Germanic,* 196 U. S. 589, 596."

The statute does not offend against the requirements of the Constitution of this Commonwealth. This conclusion is in accord with the great weight of authority, though we do not adopt the reasoning on which some of the decisions are supported. *Smith* v. *State,* 186 Ind. 252. *State* v. *Goldstone,* 144 Minn. 405, 408. *Schultz* v. *State,* 89 Neb. 34, 37–40. *State* v. *Schaeffer,* 96 Ohio St. 215. *Mulkern* v. *State,* 176 Wis. 490. *Hood & Wheeler Furniture Co.* v. *Royal,* 200 Ala. 607. *People* v. *Beak,* 291 Ill. 449. *People* v. *Dow,* 155 Mich. 115. *State* v. *Roundtree,* 181 N. C. 535. See, however, to the contrary, *Hayes* v. *State,* 11 Ga. App. 371, affirmed in *Strickland* v. *Whatley,* 142 Ga. 802; *Russell* v. *State,* 88 Tex. Cr. 512.

We are of opinion that the statute is not contrary to any guaranty of the Fourteenth Amendment to the Federal Constitution. The first ten Amendments to the Constitution of the United States do not limit the powers of the

several State governments but operate on the national government alone. *Commonwealth* v. *Wilkins,* 243 Mass. 356, 361. In *Miller* v. *Strahl,* 239 U. S. 426, a State statute, requiring certain innkeepers in addition to other specified acts " to do all in their power to save " guests and inmates in case of fire, was held not to be violative of equal protection of the laws or of due process of law, the court saying at page 434, " Rules of conduct must necessarily be expressed in general terms and depend for their application upon circumstances, and circumstances vary. It may be true . . . that ' men are differently constituted,' some being ' abject cowards, and few only are real heroes;' that the brains of some people work ' rapidly and normally in the face of danger while other people lose all control over their actions.' It is manifest that rules could not be prescribed to meet these varying qualities. Yet all must be brought to judgment. And what better test could be devised than the doing of ' all in one's power ' as determined by the circumstances? " That decision goes much further than is required to uphold the statute here attacked. *Waters-Pierce Oil Co.* v. *Texas,* 212 U. S. 86, 109. *Fox* v. *Washington,* 236 U. S. 273. *Omaechevarria* v. *Idaho,* 246 U. S. 343, 348. The case at bar seems to us distinguishable from *United States* v. *L. Cohen Grocery Co.* 255 U. S. 81, and supporting cases there cited.

The motion to quash was overruled rightly.

The statute according to its plain words makes the act of operating a motor vehicle on a way " so that the lives or safety of the public might be endangered " a criminal offence. It is that act which is penalized. The intent with which the act is done is an immaterial factor. It is irrelevant whether the act is negligent, or not. Although it may be difficult to conceive of the operation of a motor vehicle on a way so as to endanger the lives or safety of the public which does not at the same time involve some element of negligence, nevertheless, the statute says nothing about negligence. Therefore, the question of negligence is foreign to the issues raised under the indictment. The only fact to be determined is whether the defendant did the prohibited

act. This belongs to the class of statutes, of which there are many instances, where the General Court, legislating for the common welfare, has put the burden upon the individual of ascertaining at his peril whether his conduct is within the sweep of a criminal prohibition. The performance of the specific act constitutes the crime. The moral turpitude or purity of the motive by which it was prompted, and the knowledge or ignorance of its criminal character, are immaterial on the question of guilt. *Commonwealth* v. *Mixer*, 207 Mass. 141, where many such statutes are reviewed. *Commonwealth* v. *Sacks*, 214 Mass. 72. *Commonwealth* v. *Lanides*, 239 Mass. 103. *Attorney General* v. *Tufts*, 239 Mass. 458, 500. *United States* v. *Balint*, 258 U. S. 250, 252. *Griffiths* v. *Studebakers, Ltd.* [1924] 1 K. B. 102. It follows that the first five requests of the defendant for instructions, to the effect that there must have been on the part of the defendant an intent to endanger the lives and safety of the public, or wanton, reckless or foolhardy conduct, or deliberate disregard of the safety of others, or gross negligence, were denied rightly.

The instruction that the act of the defendant must have been "something for which the defendant is responsible through his own negligence," although inaccurate, was in favor of the defendant and hence he cannot complain.

The sixth request, that if the driver of the vehicle which collided with the defendant's automobile was himself reckless or negligent, that fact should be considered on the question of the defendant's due care, was denied rightly. The defendant's due care was not the issue. The issue was whether the defendant committed the act inhibited by the statute. While all the circumstances, including the conduct of others on the way at the time, were pertinent, this request was not a correct statement of the law. *Commonwealth* v. *Horsfall*, 213 Mass. 232, 235. *Commonwealth* v. *Guillemette*, 243 Mass. 346.

The statute as thus construed does not amount to a prohibition of the use of motor vehicles. It is simply a regulation of their use. The safety of the public from injury and loss of life through the operation of motor vehicles well

may have been thought by the Legislature to be of such supervening importance as to warrant the enactment of such a statute. It is matter of common knowledge that many lives are lost and many persons injured through the operation of motor vehicles on public ways. Any rational statute designed to diminish this appalling impairment of human usefulness and happiness is within the power of the General Court under the grant in the Constitution to enact all manner of reasonable and wholesome laws. Illustrations put in argument of possible hardship upon those who operate motor vehicles fall far short of showing that the present statute is arbitrary or unreasonable, or that it is not adapted to the accomplishment of a permissible result.

The conduct on which this indictment is founded took place near the junction of Riverside Avenue and the Fellsway in the city of Medford. There was a collision between a horse and wagon driven by one DiFazio and an automobile driven by the defendant. It cannot be said that there was error in denying the defendant's request for a ruling that, if both vehicles reached the intersection of streets at the same time, the defendant had the right of way. It does not appear that the facts were such as to render pertinent any such ruling. There was evidence tending to show that in the middle of the Fellsway was a street car reservation on each side of which was a roadway; that the right hand roadway coming from Medford toward Boston, as was the defendant, was given wholly to travel in that direction; that the defendant was on the left of that roadway; and that the horse struck and killed by the defendant's automobile was over the car tracks when hit. Moreover, the defendant testified that when he first saw the team the rear wheels were on the car tracks and the team was eighteen to twenty feet away from him. There was no applicability in G. L. c. 89, § 8, and *McCarthy* v. *Beckwith*, 246 Mass. 409.

*Exceptions overruled.*