COMMONWEALTH vs. RICHARD M. WALLACE.

Middlesex. May 11, 1982. — September 1, 1982.

Present: GRANT, BROWN, & DREBEN, JJ.

*Motor Vehicle*, Operating to endanger, Operating under the influence. *Intent. Public Welfare Offense.*

At a trial on complaints charging the defendant with violating G. L. c. 90, § 24(1) (*a*), operating a motor vehicle while under the influence of drugs, and § 24(2) (*a*), operating a motor vehicle negligently so that the lives or safety of the public might be endangered, it was error to preclude the defendant from introducing evidence that he did not know of the possible effects a prescription medication he was taking had on his driving ability, that he did not receive warnings as to its use, and that he had no reason to anticipate the effects which the drug induced. [359-365]

At a trial of a defendant charged with operating a motor vehicle while under the influence of drugs, medication prescribed by his physician, the judge did not err in refusing to instruct the jury that a physician and a pharmacist are required to warn patients of each and every adverse effect such medication might have on the patient. [365-366]

COMPLAINTS received and sworn to in the Central Middlesex Division of the District Court Department on February 2, 1981.

Upon transfer to the First Southern Middlesex Division, the case was tried before *Clancy*, J.

*Henry P. Sorett* for the defendant.

*Robert L. Rossi*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. After taking chlordiazepoxide,[1] a medication prescribed by his physician, the defendant was involved in an automobile accident. At his trial on complaints charging

---

[1] Commonly called Librium.

him with operating a motor vehicle "while under the influence of" drugs (G. L. c. 90, § 24[1][*a*][2]) and with operating "a [motor] vehicle negligently so that the lives or safety of the public might be endangered" (G. L. c. 90, § 24[2] [*a*][3]), the defendant was precluded, on objection by the Commonwealth, from introducing evidence that he had no knowledge of the effects of the medication and that he had not received warnings about using the drug before driving. The defendant was also unsuccessful in obtaining an instruction that the Commonwealth was required to prove that he knew or should have known that the drug might affect his ability to drive safely. The defendant was convicted of both charges. The trial judge imposed fines but stayed their payment pending appeal. We conclude that the excluded evidence was relevant and reverse the convictions.

The applicable portion of G. L. c. 90, § 24(1) (*a*), is set forth in the margin.[4] The Commonwealth contends that the provision is to be read as a "public welfare" statute imposing strict liability notwithstanding "innocent intent." See *Commonwealth* v. *Buckley,* 354 Mass. 508, 510 (1968). On this reading, it is irrelevant whether an accused knows or has reason to know that a drug prescribed by his physician may affect his driving ability. The act itself, i.e., driving under the influence of drugs, irrespective of fault, is the crime, and is punishable by imprisonment for up to two years.

---

[2] Unless otherwise indicated, citations to G. L. c. 90, § 24(1) (*a*), are to that section as appearing in St. 1971, c. 1071, § 4.

[3] Unless otherwise indicated, citations to G. L. c. 90, § 24(2) (*a*), are to that section as appearing in St. 1975, c. 156, § 1.

[4] "Whoever, upon any way or in any place to which the public has a right of access, or upon any way or in any place to which members of the public have access as invitees or licensees, operates a motor vehicle while under the influence of intoxicating liquor, or of marihuana, narcotic drugs, depressants or stimulant substances, all as defined in section one of chapter ninety-four C, or the vapors of glue, shall be punished by a fine of not less than thirty-five nor more than a thousand dollars, or by imprisonment for not less than two weeks nor more than two years, or both such fine and imprisonment."

We note at the outset that, at least in some cases, the literal wording of the statute is not to apply. For example, it cannot seriously be contended that the Legislature made it a crime to be forced at gunpoint to take drugs and drive or to drive after having unknowingly been slipped a drug within the statutory definition. At best, the statute is expressed elliptically.[5]

The main thrust of G. L. c. 90, § 24(1) (*a*), is directed at the voluntary consumption of alcohol or drugs whose consequences are known or should be known to the user. This construction is borne out by *Commonwealth* v. *Dale*, 264 Mass. 535, 537 (1928). Writing at a time when § 24 referred only to intoxicating liquor, the court stated, "The Commonwealth had the burden of proving not only that the defendant was drunk, but also that this condition was caused by the *voluntary* use of intoxicating liquor" (emphasis supplied). The *Dale* language is persuasive[6] because "[a] person should not be criminally liable for operating a motor vehicle while under the influence of liquor or drugs if his consumption of such liquor or drugs was not voluntary. The punishment for this crime is too severe to render it a general welfare offense with consequent 'strict liability' . . .." Nolan, Criminal Law § 555, at 363 (1976) (discussing *Dale*).

Although the circumstances of a person who drives after taking a prescription drug unaware of its possible effects differ significantly from those of a person forced to drive after having a potion rammed down his throat or after being tricked, such circumstances also differ substantially from

---

[5] See Model Penal Code § 2.05 comment 3, at 145-146 (Tent. Draft No. 4, 1955).

[6] The statement in *Dale* is not conclusive as to the interpretation of § 24 because the only defendant (there were two) charged with operating a motor vehicle while under the influence of intoxicating liquor was also charged with being drunk. That crime was defined as "the voluntary use of intoxicating liquor." See G. L. c. 272, § 48, as in effect in 1927. The court did not distinguish between the two offenses, and it is possible that its discussion referred to the offense of drunkenness alone.

those of a person who drives after voluntarily consuming alcohol or drugs whose effects are or should be known.[7] The law recognizes the differences, and authorities have characterized as "involuntary intoxication by medicine" the condition of a defendant who has taken prescribed drugs with severe unanticipated effects. See LaFave & Scott, Criminal Law § 45, at 348 (1972); Perkins, Criminal Law 897 (2d ed. 1969) ("such intoxication is involuntary, because the patient is entitled to assume that an intoxicating dose would not be prescribed").[8] See also *Commonwealth v. Sheehan*, 376 Mass. 765, 771 n.6 (1978), where the court noted that no evidence had been offered that the consumption in that case was involuntary, and pointed out that "[d]ifferent considerations may well be appropriate in determining criminal responsibility where a defendant's conduct is affected by a forced, an unknowing, or a lawful consumption of drugs."

Although there are few cases involving unanticipated effects of prescription drugs on a defendant's driving ability, and although each case depends on the specific statutory provision involved, the concept of "involuntary intoxication" has been applied to motor vehicle violations of the type under consideration in the present case. Authorities elsewhere indicate that such a nonvoluntary taking of a drug excuses certain motor vehicle offenses. See, e.g., *People v. Koch*, 250 A.D. 623, 624, 625 (N.Y. 1937); *Burnett v. Commonwealth*, 284 S.W.2d 654, 658 (Ky. 1955); *Kaiser v.*

---

[7] In the case of alcohol, our cases posit that "the effects of liquor upon the mind and actions of men are well known to everybody." *Commonwealth v. Taylor*, 263 Mass. 356, 362 (1928). See also *Commonwealth v. Hawkins*, 3 Gray 463, 466 (1855). The same assumption applies where there is a voluntary consumption (usually illicit) of statutorily defined drugs obtained other than through a physician's prescription. See *Commonwealth v. Sheehan*, 376 Mass. 765, 771 (1978); *Commonwealth v. Loretta*, 386 Mass. 794, 799-800 (1982).

[8] The Model Penal Code § 2.08(5)(b) (1962) defines self-induced intoxication as follows: "intoxication caused by substances which the actor knowingly introduces into his body, the tendency of which to cause intoxication he knows or ought to know, unless he introduces them pursuant to medical advice or under such circumstances as would afford a defense to a charge of crime."

*Suburban Transp. Sys.*, 65 Wash.2d 461, 466-468 (1965). See also *State* v. *Altimus*, 306 Minn. 462, 469-470 (1976). Cf. *State* v. *West*, 416 A.2d 5, 8-9 (Me. 1980). Contra *Jackson* v. *State*, 397 P.2d 920, 923-924 (Okla. Crim. App. 1964); *State* v. *Hill*, 31 N.C. App. 733 (1976) (strict liability but cough syrup ingested was not a prescription drug).

The question remains, however, whether the Massachusetts Legislature in § 24(1) (*a*) intended to penalize driving after such consumption, even if characterized as nonvoluntary. In *Commonwealth* v. *Kraatz*, 2 Mass. App. Ct. 196, 200 (1974), we noted that the history of § 24[9] is "a patchwork of judicial decisions and legislative engraftments which beclouds any clear perception of legislative intent." Nevertheless, there is some indication, both in legislative material and in judicial decisions, that § 24 is not intended to impose criminal liability on unknowing defendants.

Of particular significance is the Third Report of the Judicial Council of Massachusetts, 1927 Pub. Doc. No. 144, at 35-37 (Report). That Report was subsequent to the decision in *Commonwealth* v. *Pentz*, 247 Mass. 500 (1924), one of the cases relied upon by the Commonwealth here. At the time of *Pentz*, the provision dealing with driving to endanger (now G. L. c. 90, § 24[2] [*a*]) did not contain the word "negligently." The *Pentz* court held that "[i]t is [the] act which is penalized. The intent with which the act is done is an immaterial factor. It is irrelevant whether the act is negligent, or not." 247 Mass. at 509. At the request of the Massachusetts Senate, the Judicial Council investigated a bill designed to negate the construction adopted by the *Pentz* court. Describing the bill as "intended to avoid the liability of perfectly innocent and well-intentioned careful persons to criminal proceedings," the Council pointed out that the construction given to the statute in *Pentz* and other cases may make a person "criminally liable to imprisonment under circumstances which . . . would not subject him to a

---

[9] In that case we referred only to G. L. c. 90, § 24(2) (*a*). However, prior to St. 1936, c. 434, §§ 24(1) (*a*) and 24(2) (*a*) were contained in a single section, § 24.

liability for damages in a civil proceeding." Report, *supra* at 35, 36. The Council recommended passage of the bill, stating, "We do not think the [L]egislature could have intended to subject a man to criminal liability for imprisonment if by accident a situation arises without fault on his part . . .. The tendency to create criminal liability in cases in which there is no criminal element or intent, express or implied, seems to us mistaken." *Id.* at 37. In 1928, St. 1928, c. 281, § 1, was enacted, adopting the Council's recommendation.[10]

While the Council was addressing the provision now found in § 24(2)(*a*), its arguments apply with equal vigor to § 24(1)(*a*). We also think it significant that, as set forth in the margin,[11] the Legislature and recent judicial decisions have avoided a construction which would impose imprisonment without fault under other parts of § 24 and under other provisions of the motor vehicle laws.

Our conclusion is strengthened by a rule of construction, followed in Massachusetts, which requires particular clarity of language before finding a legislative intent to create a "public welfare" offense punishable by a severe penalty.[12]

---

[10] Statute 1928, c. 281, § 1, inserted the word "negligently" in § 24 so as to read, "Whoever upon any way . . . operates a motor vehicle . . . *negligently* so that the lives or safety of the public might be endangered . . . shall be punished . . ." (emphasis supplied). The current G. L. c. 90, § 24(2)(*a*), contains the same language.

[11] The Legislature, in enacting St. 1926, c. 253, amended § 24 so as to require knowledge for the unauthorized use of a motor vehicle, thus rejecting the strict liability made possible by *Commonwealth v. Coleman,* 252 Mass. 241 (1925). See *Commonwealth v. Kraatz,* 2 Mass. App. Ct. at 200. This court, in *Kraatz,* at 201-202, required scienter for the making of false statements in a license application even though the term "knowingly" was not used for such applications and was used in another clause for the making of false statements in a registration application. Cases finding a requirement of fault or knowledge with respect to other provisions of the motor vehicle laws include *Commonwealth v. Sabean,* 275 Mass. 546, 552-553 (1931), and *Commonwealth v. Crosscup,* 369 Mass. 228 (1975). Cf. *Commonwealth v. Bleakney,* 278 Mass. 198, 202 (1932).

[12] There are certain exceptions, e.g., rape of a minor under sixteen where the offense may be committed "without any knowledge on the defendant's part of the age of the victim." *Commonwealth v. Miller,* 385

Because traditionally, at common law, some element of intent or knowledge was required before punishment could be imposed, see *Morissette* v. *United States*, 342 U.S. 246, 250-251 (1952),[13] and because due process considerations may, in some cases, require some degree of notice, see *Lambert* v. *California*, 355 U.S. 225, 228 (1957); *Commonwealth* v. *Crosscup*, 369 Mass. 228, 235 & n.6 (1975); *Commonwealth* v. *Jackson*, 369 Mass. 904, 916 (1976), courts are reluctant to infer a legislative intent to impose absolute liability.[14] "[I]n the absence of specific words saying so," it is not supposed "that the legislature intended to make accidents and mistakes crimes." *State* v. *Brown*, 38 Kan. 390, 393 (1888). In *Commonwealth* v. *Murphy*, 342 Mass. 393, 397 (1961), the Supreme Judicial Court stated, "An intention to create such an offence should appear in clear and unambiguous language." Where the offense permits the imposition of a severe penalty, here as much as two years' imprisonment, "it would take unusually clear legislative language to lead us to the view that knowledge is not required for a conviction . . .." *Commonwealth* v. *Buckley*, 354 Mass. at 511-512. See also *Commonwealth* v. *Crosscup*, 369 Mass. at 234. Cf. *Morissette* v. *United States*, 342 U.S. at 256. Compare *Simon* v. *Solomon*, 385 Mass. 91, 100-103 (1982). Contrast *Commonwealth* v. *Minicost Car Rental, Inc.*, 354 Mass. 746, 748-749 (1968); *Commonwealth* v. *Brady*, 370 Mass. 630 (1976) (minor penalties).

---

Mass. 521, 522 (1982). For an explanation of the policy considerations of such exceptions, see Sayre, Public Welfare Offenses, 33 Colum. L. Rev. 55, 73-74 (1933).

[13] By pointing out that "public welfare offenses" are usually found in situations where the accused "is in a position to prevent [the violation] with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities," *Morissette* v. *United States*, 342 U.S. at 246, suggests that even for these offenses some element of notice is implicit. Cf. *Commonwealth* v. *Crosscup*, 369 Mass. 228, 236 & n.7 (1975), quoting from Mr. Justice Holmes in *Commonwealth* v. *Smith*, 166 Mass. 370, 375-376 (1896). Perkins, Criminal Law 806 (2d ed. 1969) adopts a similar view.

[14] The Model Penal Code § 2.05 (1962) rejects the imposition of strict liability except for minor violations which do not impose imprisonment.

No such clear language appears in G. L. c. 90, § 24(1)(a). Accordingly, we hold that it was error to preclude the defendant from introducing evidence that he did not know of the possible effects of the medication on his driving ability, that he did not receive warnings as to its use, and that he had no reason to anticipate the effects which the drug induced.[15] His failure to receive warnings from his physician and pharmacist, if there is evidence of such failure, is relevant both to the charge of driving under the influence of drugs (G. L. c. 90, § 24[1][a]) and to the charge of negligence (G. L. c. 90, § 24[2][a]).

Since we conclude that the defendant is entitled to a new trial, we need not consider whether the form of the requested instruction as to the defendant's knowledge was adequate to preserve this issue on appeal. Compare *Commonwealth* v. *Larmey, ante* 281, 285 (1982), with *Commonwealth* v. *Sherry,* 386 Mass. 682, 697 (1982). The defendant, on a new trial, will be entitled to an instruction that he may not be convicted under G. L. c. 90, § 24(1)(a), unless he knew or had reason to know of the possible effects of the drug on his driving abilities.

We consider briefly the other instructions sought by the defendant which may be requested on a retrial. The defendant has not cited any authority or made any persuasive argument in support of his conclusion that G. L. c. 94C, § 22(a), and G. L. c. 94C, § 21, require the broad warnings contained in his proposed instructions.[16] To the contrary, "[t]he obligation to give adequate information does not require the disclosure of all risks of a proposed therapy." *Harnish* v. *Children's Hosp. Medical Center,* 387 Mass. 152,

---

[15] We do not imply that a jury could not in some instances find that a defendant had information sufficient to place on him a duty of inquiring of his doctor as to the possible effects of a prescription drug. In such circumstances, a conviction under § 24(1)(a) would be proper if it is found that the defendant was negligent in not asking, and hence not knowing, of such possible effects on his driving.

[16] The instructions requested stated that a physician and a pharmacist are "required to warn patients . . . of each and every adverse effect such medication might have on the patient."

156 (1982). "The remotely possible risks of a proposed treatment may be almost without limit." *Id.* at 155. For that reason, if for no other, there was no error in the failure to give the defendant's proposed instructions 4 and 5. As to the judge's discretion on the relevance of evidence as to the negligence, if any, of the doctor or pharmacist, see Liacos, Massachusetts Evidence 408-411 (5th ed. 1981).

*Judgments reversed.*

*Verdicts set aside.*