COMMONWEALTH vs. PATRICIA M. DARCH.

No. 00-P-1393.

Plymouth. November 6, 2001. - May 13, 2002.

Present: BROWN, GREENBERG, & McHUGH, JJ.

*Alcoholic Liquors,* Motor vehicle. *Motor Vehicle,* Operating under the influence. *Intent. Intoxication. Evidence,* Intent, Intoxication. *Practice, Criminal,* Assistance of counsel.

This court remanded a criminal case for an evidentiary hearing to determine whether, at the trial of a complaint alleging operation of a motor vehicle while under the influence of intoxicating liquor, defense counsel rendered ineffective assistance by failing to pursue a defense of lack of criminal responsibility based on involuntary intoxication due to misprescribed drugs, an issue squarely raised by the evidence introduced at trial. [715-718]


COMPLAINT received and sworn to in the Hingham Division of the District Court Department on November 10, 1997.

The case was tried before *Patrick J. Hurley,* J.

*J. Whitfield Larrabee* for the defendant.

*Gail M. McKenna,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. The defendant was convicted by a District Court jury of operating a motor vehicle under the influence of intoxicating liquor in violation of G. L. c. 90, § 24. Her appeal focuses on the question whether she received effective representation in view of trial counsel's alleged failure to vigorously pursue a defense of lack of criminal responsibility based on involuntary intoxication.

On November 9, 1997, Officer Robert Mansfield found the defendant seated behind the wheel of her car, which apparently had struck another vehicle. The other vehicle was partially on the lawn of 62 South Street in Hingham. His efforts to ascertain

how the accident had occurred were unsuccessful. The defendant could offer no explanation. Based upon his observations of the points of impact of the vehicles, tire marks, and an odor of alcohol on the defendant's breath, Mansfield placed the defendant under arrest. She was placed in an ambulance and taken to the South Shore Hospital. Mansfield's opinion, to which he testified at trial, was that the defendant was under the influence of alcohol based on the odor of her breath and her slurred speech.

The defendant stayed at the hospital for approximately eight hours and was taken to the police station for booking at 4:00 P.M. on November 10, 1997. There, duly advised of her rights regarding chemical testing, the defendant elected to submit to a blood alcohol examination. See G. L. c. 90, § 24(1)(*e*), as amended through St. 1980, c. 383, § 1. Lieutenant Joseph Mc-Cracken, a Hingham police officer trained to administer breathalyzer tests, examined samples of the defendant's exhalations, and determined that she had a blood-alcohol level of .14, a convincing result considering a reading of .08 or higher triggers a statutory presumption of intoxication. See G. L. c. 90, § 24(1)(*e*), as amended by St. 1980, c. 383, § 1.

After the Commonwealth presented its case, the defendant called an expert witness, Dr. Millet Hardy, a neuropsychiatrist who had begun treating the defendant about nine months after her arrest. For reasons that do not appear in the record, Dr. Hardy never spoke to the psychiatrist who had been treating the defendant at the time of her arrest, and that psychiatrist was not called to testify. What is clear is that prior to the accident, the defendant had been diagnosed and treated for attention deficit disorder as well as depression and anxiety. In Dr. Hardy's opinion, at the time of her arrest, the defendant had taken too much prescribed medication which "actively precipitated a manic" state. Combined with the two drinks that she had admitted to imbibing, this state caused her to become psychotic and unable to control her behavior in a rational way. In Dr. Hardy's opinion, the defendant's decision to drive, which was preceded by her unsuccessful attempt to commit suicide in her car by occluding the tail pipe of the exhaust system, was influenced by delusions. Dr. Hardy established, by reviewing her past prescrip-

tions, that the four medications prescribed the defendant at the time of the accident all carried warnings that they should not be taken with alcohol.[1] The defendant argues that her attorney had submitted sufficient proof to argue that the defendant was "involuntarily intoxicated," and so lacked criminal responsibility at the time of the accident here.

Examples of involuntary intoxication include situations in which a defendant is compelled to ingest intoxicants unwillingly, or where a defendant suffers intoxicating effects from prescription medication used as instructed. In the latter case, the defense is premised on the notion that a defendant, at least where not specifically told otherwise, is entitled to presume that an intoxicating dose of medication will not be prescribed. See *Commonwealth* v. *Sheehan*, 376 Mass. 765, 771 n.6 (1978). Where sufficient evidence exists to create the possibility for an inference of involuntary intoxication, and where the evidence of intoxication provides a basis for inferring lack of criminal responsibility under *Commonwealth* v. *McHoul*, 352 Mass. 544, 546-547 (1967), the Commonwealth bears the burden of proving that the defendant's intoxication was voluntary in order to obtain a conviction.

The particular facts of this case, insofar as it involves both voluntary (the defendant's admitted use of alcohol on the night of accident) *and* involuntary intoxication, make application of the foregoing principles somewhat difficult. The general rule is that where the cause of a mental condition that creates a lack of criminal responsibility is distinct from the effects of any voluntary consumption of alcohol, a defendant may still assert the defense — even if the voluntary use of alcohol triggered the diminished mental state. See *Commonwealth* v. *Brennan*, 399 Mass. 358, 362 (1987). However, a defendant may not assert lack of criminal responsibility where he had reason to know in advance that the use of alcohol would produce such a condition. *Ibid.* See *Commonwealth* v. *Sheehan*, 376 Mass. at 769. Thus, in this case, if the defendant had reason to know that her use of alcohol might combine with her prescription medications to impair her mental faculties, and such a combined effect was in

---

[1]Hardy's review of the defendant's medication indicated that she was taking Wellbutrin, Effexor, BuSpar, and Ativan (Lorazepam) at the time of her arrest.

fact the cause of her diminished abilities, she would be deemed criminally responsible for her actions. If, on the other hand, she had no such foreknowledge, or if her mental defect existed wholly apart from any use of alcohol, the defense would be available.

Finally, we note that where proof of intoxication is an express element of any offense charged, the Commonwealth bears the burden of proving that the defendant's intoxication was voluntary — even where the degree of intoxication is not so severe as to provide a basis for inferring lack of criminal responsibility under *McHoul.* As we stated in *Commonwealth* v. *Wallace,* 14 Mass. App. Ct. 358, 360 (1982), "it cannot seriously be contended that the Legislature made it a crime . . . to drive after having unknowingly been slipped a[n intoxicating] drug." Similarly, in *Commonwealth* v. *Dale,* 264 Mass. 535, 537 (1928), the Supreme Judicial Court stated in the context of a driving while intoxicated case that "[t]he Commonwealth had the burden of proving not only that the defendant was drunk, but also that this condition was caused by the voluntary use of intoxicating liquor." The same test for determining whether intoxication is voluntary or involuntary for the purposes of assessing criminal responsibility under *McHoul* also applies in this context.[2]

As stated already, Dr. Hardy testified that the defendant was psychotic and suicidal on the date of her arrest.[3] He opined further that these conditions were the result of improper overmedication. Based on the foregoing, this evidence squarely raised the question of whether the defendant lacked criminal responsibility.

. The Commonwealth noted objections at a few points to Dr. Hardy's testimony, but did not cross-examine him extensively, nor did the government introduce any countervailing proof. In

---

[2]In her brief, the defendant presents no argument based on this specific theory. Rather, she asserts exclusively that defense counsel erred in failing to press the general issue of lack of criminal responsibility under *McHoul.* However, the motion judge may elect to consider these principles in passing on the defendant's motion for new trial.

[3]Dr. Hardy defined psychotic as being out of touch with reality and unable to control one's behavior in a rational way and perhaps being influenced by delusions that distort reality.

essence, defense counsel successfully introduced foundational evidence to establish that the defendant's intoxicated condition may have been caused not by the voluntary use of alcohol, but rather by using misprescribed drugs. See *Commonwealth* v. *Dale*, 264 Mass. at 537; *Commonwealth* v. *Williams*, 19 Mass. App. Ct. 915, 916 (1984). While the weight of Dr. Hardy's testimony is open to question, the fact that trial counsel chose not to press the issue of criminal responsibility, save for a few sentences in his closing, and also failed to ask for an instruction on this defense is very troubling.

On appeal, the Commonwealth takes the position that drug or alcohol abuse can never provide the basis for a claim of lack of criminal responsibility. In the government's view, "[t]he lack of substantial capacity must arise from [an] . . . underlying disease or defect rather than the voluntary consumption of alcohol." *Commonwealth* v. *Brennan*, 399 Mass. at 363. However, to say that voluntary consumption does not qualify as a defense misses the crucial point here. The question is whether, in view of Dr. Hardy's testimony, the defendant's intoxication was, in fact, voluntary. Since there was no contradictory evidence on the question, there is no obvious tactical basis for failing to put the issue squarely before the jury.

However, review of matters like this usually must be posed by a motion for a new trial to provide trial counsel an opportunity to explain his strategic decisions, and so to provide the trial judge with a forum for determining both whether trial counsel's decision to follow a particular line of defense was unreasonable, and whether it likely influenced the outcome of the trial. Here, it is premature for us to decide whether the failure to pursue a defense of lack of criminal responsibility amounted to ineffective representation.

We do not know, for example, what, if anything, the defendant was told about the side effects of her medications. In addition, although Dr. Hardy's testimony touched on the issue of mental competence, he did not speak specifically to the issue of criminal responsibility in the precise terms defined by *McHoul*. Further, there was little evidence whether the defendant's alcohol consumption was a triggering, or merely an exacerbating, factor with respect to her diminished mental state — as

noted already, a crucial issue in determining the question of criminal responsibility in cases like this. Finally, as there are few decisions involving unanticipated effects of prescription drugs on a defendant's driving ability, trial counsel may have abandoned the defense as a calculated tactical decision. But see *Commonwealth* v. *Westmoreland*, 388 Mass. 269, 270-275 (1983) (the abandonment of insanity defense at closing argument likely deprived defendant of otherwise available, substantial ground of defense). All of these issues can be resolved at a hearing on a motion for new trial.

In summary, we are not prepared to say that defense counsel's failure to argue or ask for an instruction on lack of criminal responsibility constitutes ineffective representation according to the standard set out in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). However, it is an issue of sufficient importance to warrant an evidentiary hearing concerning trial counsel's reasons for conducting the defense as he did. It is one thing to discount the probability of succeeding on a rarely used defense. It is another thing to spend considerable time skillfully developing the evidentiary basis for a potentially viable defense, and then failing to insure that the jury had the option of considering the theory. At the hearing on the motion for new trial, the judge's inquiry and his findings should address the reasons counsel may have had for conducting the defense as he did. See *Commonwealth* v. *Aviles*, 31 Mass. App. Ct. 244, 248-249 (1991). We remand to the District Court to allow appellate counsel to file a motion under Mass.R.Crim.P. 30(a), 378 Mass. 900 (1979), and for the trial judge to make findings after an evidentiary hearing.[4]

*So ordered.*

---

[4]In view of our decision, we need not consider the second argument raised by defense counsel, namely, whether the trial judge should have instructed the jury on voluntary intoxication sua sponte.