## COMMONWEALTH *vs.* LISE J. BISHOP.

No. 08-P-1735.

Barnstable. December 11, 2009. - October 15, 2010.

Present: RAPOZA, C.J., KAFKER, & HANLON,·JJ.

*Motor Vehicle,* Operating under the influence. *Practice, Criminal,* Instructions to jury. *Intoxication. Evidence,* Intoxication.

At the trial of a complaint charging operation of a motor vehicle while under the influence of intoxicating liquor, in violation of G. L. c. 90, § 24, in which the defendant argued that her intoxication was caused by a combination of alcohol and prescription drugs, and that she was unaware that the combination would impair her ability to drive, the judge's proper instructions on the issue of voluntary intoxication clearly informed the jury that the Commonwealth had the burden of proving that alcohol was at least one cause of the defendant's diminished capacity to operate a motor vehicle safely, and that the defendant was entitled to an acquittal if her intoxication was involuntary due solely to prescribed medication. [72-76]

COMPLAINT received and sworn to in the Barnstable Division of the District Court Department on April 9, 2007.

The case was tried before *Joan E. Lynch,* J.

*Kathleen Putney Towers* for the defendant.

*Robert D. Moriarty,* Assistant District Attorney, for the Commonwealth.

HANLON, J. A jury convicted the defendant of operating a motor vehicle while under the influence of intoxicating liquor, in violation of G. L. c. 90, § 24.[1] Her primary argument on appeal is that the trial judge's instructions to the jury on the issue of involuntary intoxication were erroneous and created a substantial risk of a miscarriage of justice. We affirm.

*Background.* After a short trial, the jury would have been

---

[1]After the trial, the defendant pleaded guilty to the subsequent offense portion of the charge. She was found not responsible on a separate charge of operating an unregistered motor vehicle.

warranted in finding the following facts. Yarmouth police Officer Raymond Schichilone discovered the defendant, Lise J. Bishop, shortly before midnight at the wheel of her car, stopped in the middle of the road in the town of Yarmouth. The car door was open, blocking the street. She appeared to be very intoxicated[2]; she was arrested and handcuffed with her hands in front of her because she had difficulty standing and needed her hands to steady herself. At the police station, the defendant began what Officer Schichilone described as "outbursts": one minute she was "calm and cooperative," and the next minute, "uncooperative and yelling." The booking sergeant confirmed the arresting officer's testimony about the defendant's presentation, stating that he believed, based upon her "easily noticeable" odor of alcohol and speech that was thick and "almost difficult to understand," the defendant was "very drunk."

The defendant testified that she remembered having two drinks and dinner with her husband in a restaurant earlier in the evening, and nothing else until she was placed in a cell after being arrested. At the time, she was taking fluoxetine, an antidepressant prescription medication, on an "as needed" basis to combat the symptoms of a premenstrual disorder. She did not know if she had used alcohol in the past while taking the medication but her doctor had not warned her of any side effects and she had read neither the patient information provided with the medication nor the labels on the bottles until after she was arrested.[3] The defendant was permitted to read the labels with the warnings, including the side effects, to the jury.[4] The defendant's husband also testified that, on the night she was

_____

[2] The officer detected an odor of alcohol; her speech was slurred and difficult to understand; her eyes were glassy and bloodshot; she had great difficulty stepping out of her car and she held onto her car to brace herself as she walked. In the officer's opinion, she failed two field sobriety tests.

[3] The defendant testified however, that, before her arrest, she was aware that the medication affected her, making her "a little more relaxed," and that she was so concerned about the errors she was making at work while taking the medication that she called her doctor, who told her to take the pills only when she needed them.

[4] The following warnings and possible side effects were included in the information read to the jury: "possible suicide thoughts[,] mental and mood changes, including new and worsening anxiety, panic attacks, trouble sleeping, irritability, hostile slash [*sic*] energy feelings, impulsive actions, severe restlessness, very rapid speech. . . . Seek medical attention if you develop some of

arrested, the defendant was acting erratically, with very violent mood swings, and that, in their twenty years of marriage, he had never seen her act like that.

*Discussion.* The defendant argues on appeal that the judge committed error because she incorrectly instructed the jury on the defense of involuntary intoxication. She contends that the judge should have instructed the jury that the defendant was not guilty if she did not know that her medication, when taken with alcohol, could result in intoxication.[5] Instead, the judge instructed the jury that the defendant was entitled to an acquittal if her intoxication was involuntary because it was caused *solely* by prescription medication.

Specifically, the judge instructed the jury: "The defendant is entitled to be acquitted if his or her intoxication was caused *solely* by an involuntary intoxication by prescribed medication. This requires that the defendant had not received the warnings as to its use, had no knowledge or reason to anticipate the intoxicating effects of the medication, and had no reason to inquire of his or her physician concerning the possible effects of the medication." (Emphasis added). This instruction was proper. See *Commonwealth* v. *Wallace*, 14 Mass. App. Ct. 358, 358-359, 365 (1982). See also Criminal Model Jury Instructions for Use in the District Court, Instruction 5.400, Operating Under the Influence of Drugs, n.4 (2009).

The judge also told the jury that "the Commonwealth must prove beyond a reasonable doubt that alcohol was *one* of the causes of the diminished capacity to operate a motor vehicle safely. If the Commonwealth has failed to prove that, the defendant is entitled to be found not guilty, to be acquitted." (Emphasis added). This instruction was also proper.

It is well established that a defendant who combines alcohol with *illegal* drugs, thus diminishing her ability to operate a vehicle safely, may be found guilty of operating under the influence of alcohol, if alcohol was one contributing cause of her

the following symptoms: Hallucination, unusual restlessness, loss of coordination, fast heartbeat, severe dizziness, unexplained fever, severe nausea, vomiting or diarrhea, twitching muscles."

[5]Although he requested that instruction, defense counsel did not object to its omission at the time the jury was charged.

diminished ability. Alcohol need not have been the sole or exclusive cause. "It is enough if the defendant's capacity to operate a motor vehicle is diminished because of alcohol, even though other, concurrent causes contribute to that diminished capacity." *Commonwealth* v. *Stathopoulos*, 401 Mass. 453, 457 (1988). The focus is thus on whether or not the consumption of liquor was one of the causes of the defendant's diminished capacity to operate safely. As this court has observed, "[t]he mixture of alcohol with another substance is not a separate theory of culpability." *Commonwealth* v. *Lampron*, 65 Mass. App. Ct. 340, 348 (2005).

The defendant argues that those cases do not apply to her because, unlike the defendants in *Stathopoulos* and *Lampron*, hers is a case of *involuntary* intoxication, caused by the unanticipated effects of the interaction of the alcohol she had consumed and the *prescription* medication she was taking as directed by her doctor. For authority, she cites *Commonwealth* v. *Darch*, 54 Mass. App. Ct. 713 (2002), which this court remanded for a hearing on whether trial counsel was ineffective for failing to pursue a defense of lack of criminal responsibility based on involuntary intoxication due to prescription medication. *Id.* at 718.

There is language in *Commonwealth* v. *Darch, supra*, that could be taken to support the defendant's position. In particular, the court said, "[I]f the defendant had reason to know that her use of alcohol might combine with her prescription medications to impair her mental faculties, and such a combined effect was in fact the cause of her diminished abilities, she would be deemed criminally responsible for her actions. If, on the other hand, she had no such foreknowledge . . . the defense would be available." *Id.* at 715-716. As noted, in the present case, the defendant requested this instruction and, indeed, such a request is supported in the District Court Criminal Model Jury Instructions, which cite to *Darch*.[6]

_____

[6]See Criminal Model Jury Instructions for Use in the District Court, Instruction 5.300, Operating Under the Influence of Intoxicating Liquor, n.8 (2009) (The "situation, where both alcohol and illegal drugs are concurrent causes of the defendant's *voluntary* intoxication, must be distinguished from that where a legally prescribed drug may have been the cause of the defendant's *involuntary* intoxication" [emphasis in original]).

This reliance on *Darch* is misplaced. In *Darch*, there was expert testimony that the defendant's underlying mental conditions, for which she was being treated by a psychiatrist, were exacerbated by "too much prescribed medication, . . . [and when c]ombined with the two drinks that she had admitted to imbibing . . . caused her to become psychotic and unable to control her behavior in a rational way." *Id.* at 714. The court determined that the evidence that the defendant was "psychotic and suicidal on the date of her arrest . . . squarely raised the question of whether the defendant lacked criminal responsibility." *Id.* at 716.

The case before us is on very different footing. We start by noting that this defendant never raised a defense of lack of criminal responsibility due to mental illness.[7] Nor did she argue that the prescription medication she took was itself sufficient to cause her intoxication, independent of whether she voluntarily consumed alcohol.[8] She argued only that her intoxication was caused by a combination of alcohol and her prescription drugs, and that she was unaware that the combination would impair her ability to drive.

The defendant's argument goes too far if it would create a defense for someone who knowingly combines alcohol with prescription medication and whose driving is thereby impaired. "In the case of alcohol, our cases posit that 'the effects of liquor upon the mind and actions of men are well known to everybody.' " *Commonwealth* v. *Wallace*, 14 Mass. App. Ct. at 361 n.7, quoting from *Commonwealth* v. *Taylor*, 263 Mass. 356, 362 (1928). The same thing may be said about the effects of *combining* alcohol and drugs, even prescription drugs.

[7]In addition, the defendant presented no expert evidence concerning the interaction of alcohol and the medication she was taking. Thus, even were we to conclude that a legal basis exists for the instruction that she seeks, and we do not, the requisite factual foundation has not been established on this record.

[8]Compare *Commonwealth* v. *Berry*, 457 Mass. 602 (2010), in which the Supreme Judicial Court found that the jury instructions created a substantial risk of a miscarriage of justice where, "[in] the context of the entire trial, the jury could have concluded that the defendant suffered from a mental disease or defect that *by itself* rendered her substantially incapable of conforming her conduct to the requirements of the law, but because she had consumed alcohol that contributed to her incapacity, that would render the lack of criminal responsibility defense moot" (emphasis added). *Id.* at 618.

Therefore, in cases such as this one, where the defendant is accused of operating a motor vehicle while under the influence of alcohol, and there is evidence both of the voluntary use of alcohol and of prescription medicine, taken as prescribed, the jury should be instructed, as they were here, that "[w]hen the defendant is charged with operating while under the influence of intoxicating liquor, it is immaterial whether the driver is under the influence of intoxicating liquor and other substances. . . . [In] order to find guilt, the jury need only to find that the liquor contributed to the defendant's impairment." *Commonwealth* v. *Stathopoulos*, 401 Mass. at 457, quoting from *State* v. *West*, 416 A.2d 5, 9 (Me. 1980). See *Commonwealth* v. *Lampron*, 65 Mass. App. Ct. at 348.

In such cases, the jury also should be given, as they were here, a *Wallace* instruction, specifically, that the defendant is entitled to an acquittal if her intoxication was caused *solely* by her prescription medication, taken as prescribed, and she did not know or have "reason to know of the possible effects of the drug on [her] driving abilities." *Commonwealth* v. *Wallace*, 14 Mass. App. Ct. at 365.[9]

In the present case, the defendant has no right to the instruction that she requested — that is, that she was entitled to an acquittal if she did not know that her medication, when taken with alcohol, could result in intoxication.

In sum, the trial judge clearly informed the jury that the Commonwealth had the burden of proving that alcohol was at least one cause of the defendant's diminished capacity to operate a motor vehicle safely; the judge also told the jurors that the defendant was entitled to an acquittal if her intoxication was involuntary due solely to prescribed medication. These instructions were proper and the defendant was entitled to nothing further on that issue.

The defendant's remaining arguments also fail. Because the judge's instructions adequately presented to the jury the defendant's theory of involuntary intoxication, at least insofar as that theory is supported by the law, defense counsel was not ineffective for failing to object to the charge. Nor did the prosecutor

---

[9]In cases involving illegal drugs, obviously, a *Wallace* instruction would not be appropriate.

misstate the law in his closing when he told the jurors that, if alcohol contributed to the defendant's intoxication, they would be warranted in finding her guilty.

*Judgment affirmed.*