COMMONWEALTH *vs.* LISA L. BROCHU. December 18, 1986. *Practice, Criminal,* Instructions to jury. *Motor Vehicle,* Operating under the influence.

On January 4, 1985, approximately two months before the decision in *Commonwealth* v. *Connolly,* 394 Mass. 169 (1985), the defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor. G. L. c. 90, § 24.[1] The trial judge instructed the jury that

---

[1] This was the defendant's second trial for this offense. Her first conviction was summarily reversed by the Appeals Court because the first trial judge erroneously

"the person does not have to be drunk or incapacitated by alcohol. Being under the influence means as it has been defined in our statute and case law . . . that the defendant at the time was influenced in some perceptible degree by intoxicating liquor that he or she has taken, influenced in some perceptible degree, that means a degree that could be perceived, some manner that could be perceived. It does not mean that a person could not drive a car or drive it safely. It is conceivable, for example, that a person could offend against the statute even though he or she was driving a car so carefully and so safely that there was no danger to the public. The focus of the offense is not upon the manner in which the vehicle is operated. It does not require proof . . . the alcohol influenced the operation of the vehicle, rather the focus is on the individual in question, [it] is for you to determine whether any alcohol that you find that the person has taken has influenced that person to some perceptible degree . . . ."

It is now clear that "in a prosecution for operating a motor vehicle while under the influence of intoxicating liquor, the Commonwealth must prove beyond a reasonable doubt that the defendant's consumption of alcohol diminished the defendant's *ability* to operate a motor vehicle safely. The Commonwealth need not prove that the defendant *actually drove* in an unsafe or erratic manner, but it must prove a diminished *capacity* to operate safely." *Commonwealth* v. *Connolly, supra* at 173 (emphasis in original). Because the defendant did not object to the judge's instruction on this subject, we must determine whether it created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Barrows*, 391 Mass. 781, 783-784 (1984); *Commonwealth* v. *Bryer*, 398 Mass. 9, 16-17 (1986).

The defendant was involved in an accident in the South Station tunnel at approximately 1:25 A.M. on March 6, 1983. The arresting officer, who arrived after the accident, observed that the defendant's car had sustained front end damage and was inoperable, that there were no defects in the roadway, and that there were scuff marks along the middle curbing and wall of the tunnel where the car apparently had made contact. Two other cars were stopped in front of the defendant's car, neither of which appeared to have sustained any damage. The defendant was not charged with negligent operation of her motor vehicle as a result of this accident. According to the officer, he reached the conclusion that the defendant was under the influence of intoxicating liquor after speaking with her about towing the car, smelling a strong odor of alcohol on her breath, observing that her speech was slurred, and noting that she was staggering and unsteady on her feet.[2]

found her expert to be unqualified to testify about the maintenance of the breathalyzer machine. *Commonwealth* v. *Brochu*, 18 Mass. App. Ct. 1109 (1984).

[2] The officer testified that the defendant was planning to get a ride out of the tunnel with two young men in one of the stopped cars and that he did not want the defendant to go with them " [b]ecause I feared for her own safety. She's a 19-year-old

The officer arrested the defendant for operating under the influence of intoxicating liquor and brought her back to the police station, where the booking officer also formed the opinion that she was under the influence, based upon her glassy eyes and the odor of alcohol on her breath. That officer did not think her speech was particularly slurred. Nor did he notice anything else about it. During the booking procedure, he asked if she was under any medication. "She said she was taking prescription antihistamine. . . . [She last took it at] [a]pproximately 6:30 p.m. of the 5th." He administered a breathalyzer test after asking the arresting officer to watch the defendant for twenty minutes, and she received a reading of .11. See G. L. c. 90, § 24 (1) (e). The booking officer stated that the defendant was allowed to keep her purse while she was at the station and that no inventory was made of its contents.

The defendant testified that she was returning to Boston from her home in Rhode Island when she had the accident, which was caused by a car moving into her lane as they were adjacent, going around the bend in the tunnel, making her car slide into the wall. She admitted to having shared a bottle of light beer with her brother at approximately 10:30 P.M., drinking about six ounces. She also admitted to consuming a drink containing kahlua, vodka and milk (a so-called White Russian) between 12:15 and 12:30 A.M. According to the defendant, her walk was slanted because she had worn the heels down on her Western boots, and she had red eyes because she had cried about the accident. She also claimed to have been suffering from a strain of whooping cough, for which she took antibiotics, antihistamines, and Vicks 44D cough syrup, which she knew contained alcohol. She did not mention the cough syrup to the booking officer because she had not taken any since that morning. She testified, however, that, about five minutes before she took the breathalyzer test, she had a coughing fit and took a mouthful of cough syrup from the bottle in her purse. The defendant's fiancé confirmed that she had been sick with whooping cough during this period. He also testified that during the period when the arresting officer was supposedly watching the defendant the officer came out to talk to him two times.

The defendant offered expert testimony from the owner of a company which sells, services, calibrates, and certifies breathalyzer equipment. The expert testified that if the defendant had consumed some form of alcohol during the twenty-minute waiting period before being administered the breathalyzer test, there would be a possibility of an erroneous reading. This possibility would increase if the defendant also coughed during this period, because "if there was alcohol in the stomach, it would be pure alcohol fumes out from the stomach." The expert went on to say, in essence, that the breathalyzer is supposed to measure " [a]lveolar or lung air" and not fumes from the stomach.

college student up here in Boston and the two, those two males were not her type. I mean they just appeared from my experience that I've had on the street, they were not — she couldn't — I feared for her safety with these two males in her condition."

In rebuttal, the arresting officer testified that he had conducted an inventory of the defendant's purse and that it contained neither cough syrup nor prescription pills. He also testified that he had watched the defendant for the entire twenty-minute waiting period and that she did not put anything in her mouth.

During closing argument, the prosecutor stated that "his Honor will instruct you under the influence means not that much, not that much, it's if someone is influenced in some fashion by some alcohol they took that evening. So the next thing you look at is well, what evidence do I have of alcohol that evening? We've got prescription drugs on top of beer, kahlua, vodka and milk. Timewise doesn't matter, you have evidence of under the influence of alcohol." He also pointed out that neither the defendant nor her fiancé had testified she was not under the influence that night, which argument was corrected after objection by instructions that even a defendant who testifies does not have the burden to justify or explain herself.

The jury returned with this question during deliberations: "[D]id either officer testify that prescription drugs were found on [the defendant's] person?" Although they were instructed to resolve this factual issue from their collective memories, the question indicates to us that they had not rejected the defendant's defense at that point. It also is possible that the jury may have inferred, relying on the prosecutor's argument, that they could find that this defendant was under the influence (perceptibly affected) because of the combined effect of alcohol ingested at 10:30 P.M. and 12:15 A.M. and antihistamines taken at 6:30 P.M. A conviction on that basis would have been improper here, where the defendant was not charged with operating under the influence of drugs (contrast *Commonwealth* v. *Wallace*, 14 Mass. App. Ct. 358, 358-359 [1982]) and there was no evidence that prescription medication taken some seven hours earlier was still in her system at the later hour and no basis for concluding that the drugs enhanced the effect of the alcohol. Cf. *id*. at 365. Further, this is not a case in which we can say with certainty that the jury resolved the credibility issues in the Commonwealth's favor, given the conflict in testimony between the Commonwealth's two witnesses (the booking officer and the arresting officer) as to whether the defendant was allowed to keep her purse and whether the contents were inventoried. In addition, the jury did not find, nor were they asked to find, that this defendant "actually drove in an unsafe manner." *Commonwealth* v. *Bryer*, 398 Mass. at 17. Moreover, here the defendant claimed that the cause of the accident was another car moving into her lane as she was going around a curve in the tunnel, forcing her to swerve and hit the wall of the tunnel; thus it was not undisputed that the defendant's capacity to drive was diminished. Contrast *Commonwealth* v. *Ranahan*, *ante* 201, 203 & n.2 (1986).

Although the jury could have concluded that the defendant's drinking was a cause of the accident and hence that her consumption of alcohol had diminished her ability to operate the motor vehicle safely, we cannot

say with certainty, given the circumstances of this case, whether they actually would have so decided. We thus conclude that in these circumstances the erroneous definition of operating under the influence created a substantial risk of a miscarriage of justice. There must be a new trial.

Upon retrial, "[t]he jury should [be] instructed that they [can] draw reasonable inferences from the results of the breathalyzer test in this case, but that the test is merely evidence of the defendant's being under the influence of liquor and does not necessarily dictate such a conclusion." *Commonwealth* v. *Moreira*, 385 Mass. 792, 795 (1982). Before retrial, the defendant may pursue all challenges to the admissibility of the breathalyzer results in one hearing, with her expert present. The Commonwealth must demonstrate that the machine was not so susceptible to radio frequency interference as to make the results inaccurate. *Commonwealth* v. *Neal*, 392 Mass. 1, 14 (1984).

*Judgment reversed.*
*Verdict set aside.*

FINE, J. (dissenting). Twice the defendant has been convicted by a jury on this charge of operating a motor vehicle while under the influence of intoxicating liquor. The majority of the panel would reverse the conviction because, in their judgment, the erroneous definition of the offense created a substantial risk of a miscarriage of justice. The error was the omission of language indicating that the jury could find the defendant guilty only if her consumption of alcohol affected her ability to drive safely. Shortly before the defendant was arrested, the vehicle she was operating ran into a wall. The damaged vehicle was inoperable. In these circumstances, the jury could easily infer that the defendant's ability to drive was affected by the alcohol she admitted to having consumed. I do not agree that the error created a substantial risk of a miscarriage of justice.

*Andrew Stockwell-Alpert (Esther J. Horwich* with him) for the defendant.
*Daniel P. Napolitano,* Assistant District Attorney, for the Commonwealth.