DOUGLAS RONALD WHISLER, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 42033

July 28, 2005

116 P.3d 59

*John E. Oakes,* Reno, for Appellant.

*Brian Sandoval,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Terrence P. McCarthy,* Deputy District Attorney, Washoe County, for Respondent.

Before MAUPIN, DOUGLAS and PARRAGUIRRE, JJ.

## OPINION

By the Court, PARRAGUIRRE, J.:

This is an appeal from a verdict finding appellant, Douglas Whisler, guilty of driving while under the influence of controlled substances or chemicals. On appeal, Whisler contends that the district judge erred in admitting evidence of Whisler's prior felony conviction, denying his motion in limine, refusing a proffered jury instruction on involuntary intoxication, and misinterpreting NRS 484.379. We hold that the district court properly admitted evidence of Whisler's prior conviction and that his involuntary intoxication defense is without merit. Accordingly, we affirm the judgment entered below.

### FACTS

In March 2001 in Reno, witnesses observed Whisler walking, stumbling and weaving side-to-side as he proceeded to his vehicle. After Whisler drove away, these witnesses contacted police and followed him. They testified that Whisler repeatedly weaved in and out of his travel lane, eventually stopped at his residence, and ex-

ited his vehicle. One of the witnesses approached Whisler to provide help, if needed. The witness testified that Whisler was unable to stand without leaning on the car and did not seem to understand his questions, but that he did not smell of alcohol. Whisler only explained that he was tired from an extended trip out of town.

Police officer Robert Tygard responded to Whisler's residence and noticed that Whisler was unsteady on his feet, shaking, having difficulty maintaining his balance and slurring his speech. Officer Tygard detected no odor of alcohol on Whisler. Whisler informed Officer Tygard that he had no medical problems, was not taking any medication and had just returned from a trip to Mexico. Upon the officer's request that Whisler hold out his hands, the officer noticed that Whisler's hands were shaking. Officer Tygard then conducted several field sobriety tests. While Whisler was mentally oriented to time and place, he failed the physical tests, and the officer observed two indications of impairment based upon a horizontal gaze nystagmus test.

Although Whisler initially stated he was not under a doctor's care nor taking prescription medicine, he later informed the officer that he was taking Vicodin for a chipped vertebra in his neck. Whisler also told the officer at one point that he took Vicodin twice a day, but later stated that he took this medication every four hours. Officer Tygard testified that Whisler's speech and motions seemed lethargic. Based on these observations, the officer arrested Whisler for driving while under the influence of a controlled substance or chemical (DUI) and transported him to the Washoe County Jail where blood was drawn. Test results were positive for chemicals consistent with Schedule III-type drugs. The State thereafter charged Whisler with driving under the influence of a controlled substance or chemicals.

The day before Whisler's June 2003 trial, he sought a ruling concerning the admissibility of a prior felony DUI conviction. In his motion in limine, Whisler admitted that he had sustained a felony DUI conviction in 1998 for which he received a sentence of 12-30 months. Whisler noted that he had been alcohol free for approximately six years. He also maintained that his impairment on the day in question was an unintended consequence of taking medication he received from a pharmacist in Mexico to relieve pain from a neck injury. Thus, Whisler argued that his prior felony conviction was not relevant to the current charge and that its admission would be unfairly prejudicial. Whisler insisted that he would need to testify that he did not know and was not aware of the effects of the medication. The district court determined that, if Whisler testified as to his impairment, evidence of the prior felony conviction was admissible for impeachment purposes.

At trial, Whisler defended on the theory that he unexpectedly became impaired by the combination of medications, labeling his

defense as involuntary intoxication by medication. Whisler testified in detail concerning his prior experience with alcohol. He also called his Alcoholics Anonymous sponsor to testify on his behalf that he had been sober for at least five years. Whisler preemptively testified that he had been convicted of a felony for driving under the influence of alcohol in 1998, which meant that he had had at least two prior misdemeanor convictions for DUI, and that he had promised the district court that he would stay sober.

Whisler testified that he suffers from chronic pain due to a severe and debilitating degenerative spinal condition for which he has been receiving medical treatment and medication, including Vicodin, since 1993. In March of 2001, while vacationing in Mexico, he ran out of his medication and obtained a quantity of carisoprodol, a nonprescription muscle relaxant. The next day, while still in Mexico, Whisler obtained a prescription from a physician for pain medication, allegedly Tylenol 3, along with samples of Valium.

Whisler returned to Reno the day before his arrest. He stated that, on the evening before the incident, he took one carisoprodol and one capsule of an unknown drug but felt normal. Whisler testified that he was arrested the next day after driving to the store to purchase groceries. According to Whisler, he had taken the carisoprodol every three to four hours as instructed, but again, felt normal.

The State confronted Whisler with medical records demonstrating that he had requested that his doctor increase his pain medication before his trip to Mexico and that the doctor refused and, instead, put Whisler on a detoxification plan.

At trial, a criminologist testified that Whisler's blood test revealed 5,000 nanograms per milliliter (''ng/mL'') of carisoprodol (trade name Soma), 8,200 ng/mL of meprobamate, 390 ng/mL of diazepam (trade name Valium), 510 ng/mL of nordiazepam and 39 ng/mL of temazepam. Meprobamate is a metabolite[1] of carisoprodol. Diazepam is broken down in the body as nordiazepam and temazepam. Each of these drugs is a central nervous system depressant. Dr. William Anderson, a forensic toxicologist, testified that carisoprodol is a prescription drug in Nevada but is not a scheduled drug. He also testified that this medication serves as a central nervous system depressant, that it causes a variety of effects resembling alcohol ingestion, and that users should learn its effects before driving. Dr. Anderson also explained that the 5,000 ng/mL of carisoprodol found in Whisler's blood was a rather high amount but that the level of impairment would vary with each individual. The doctor further testified that carisoprodol is recognized as an abused drug because of its euphoric effects.

---

[1]Product of metabolism in the blood.

The jury found Whisler guilty of driving while under the influence of a controlled substance or chemical. Finding that Whisler had sustained at least two prior DUI convictions within the previous seven years, the district court sentenced Whisler to one to three years incarceration. Whisler timely appealed.

## DISCUSSION

### Preemptive admission of prior convictions

As a threshold issue, the State argues that Whisler waived his right to appeal the in limine ruling because he preemptively raised the issue of his felony conviction at trial during his testimony.

In *Pineda v. State,* a case decided during the pendency of this appeal, we held that a defendant may appeal a trial court's definitive unfavorable in limine ruling to admit a prior conviction when the defendant preemptively introduces the evidence at trial.[2] Our ruling permits trial counsel to ameliorate the adverse effect of such evidence and preserve the error for appeal.[3] In *Pineda,* we discussed the United States Supreme Court decision of *Ohler v. United States*[4] and rejected its proposition that "a defendant waives his appellate standing concerning admission of prior convictions when he preemptively introduces the prior convictions after an unfavorable ruling on a motion in limine."[5]

The State urges this court to either re-embrace *Ohler,* or at least retreat somewhat from *Pineda.* In this, the State recognizes that *Pineda* is limited to situations in which the defendant has thoroughly litigated the issues in limine. However, the State posits that this court should expressly limit the *Pineda* ruling to circumstances where the State unequivocally commits to introducing the evidence regardless of other developments in the trial. The State argues that it should be free to wait to decide, during the course of trial, whether to introduce such evidence. The State contends that the *Pineda* rule takes this decision out of the State's hands.

To alleviate the problems encountered by both sides in these situations, the State suggests an alternate procedure under which, during trial, when defense counsel seeks to preemptively introduce the prior felony conviction, counsel need only request a bench conference at which time the district court can demand a commitment from the State. If the State informs both the district court and defense counsel that it does not intend to introduce the disputed evidence, the defendant's testimony can go forward with the defense

---

[2]120 Nev. 204, 209, 88 P.3d 827, 831 (2004).

[3]*Id.*

[4]529 U.S. 753, 755 (2000).

[5]*Pineda,* 120 Nev. at 208, 88 P.3d at 830.

free to decide whether to introduce the evidence. If the State informs the district court that it will present the evidence, then defense counsel can decide whether to preemptively introduce the evidence, remove the sting and still have grounds for appeal. The State argues that limiting *Pineda* in this way would prevent sham objections and leave the parties to devote their attention to the actual disputes.

We decline to adopt the invitation to change our ruling in *Pineda*. First, preservation of appellate issues concerning pretrial rulings on the admissibility of prior convictions never divests the State of its prerogatives to introduce the evidence. It simply requires another strategic decision of whether to admit evidence and invite the possibility of error on appeal. In this we note, as with the instant case, convictions are virtually never overturned based upon admission of prior convictions for impeachment. Second, while the State's suggestion has some appeal, it leaves the defendant's decision to testify and to preemptively admit the prior conviction in limbo at the early stages of the trial. By way of example, the suggested procedure would affect the content of the defendant's opening statement. Thus, on balance, we reaffirm the ruling in *Pineda* as the best approach to this preservation issue.

*Motion in limine*

Whisler contends that the district court abused its discretion in denying his motion in limine to exclude the prior conviction. In his motion, Whisler argued that, because his prior felony DUI conviction involved voluntary impairment by alcohol, and because his latest charge involved involuntary intoxication by medication,[6] the danger of unfair prejudice substantially outweighed the probative value of the evidence.

A district court's ruling on a motion in limine is reviewed for an abuse of discretion.[7] A district court may permit the State to impeach witnesses with proof of prior felony convictions.[8] Before admitting such evidence, the district court must balance "the potential for prejudice against the usefulness of the prior conviction for the purpose of impeachment."[9] NRS 48.035(1) states that relevant

---

[6]*See Com. v. Wallace,* 439 N.E.2d 848, 850 (Mass. App. Ct. 1982) (recognizing " 'involuntary intoxication by medicine' " as "the condition of a defendant who has taken prescribed drugs with severe unanticipated effects").

[7]*State v. Shade,* 111 Nev. 887, 895, 900 P.2d 327, 331 (1995).

[8]NRS 50.095; *Hicks v. State,* 95 Nev. 503, 504, 596 P.2d 505, 506 (1979).

[9]*Hicks,* 95 Nev. at 504, 596 P.2d at 506.

evidence is inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice."

The district court determined that if Whisler testified as to his impairment and defended on the ground of involuntary intoxication by medication, evidence of his felony DUI conviction would be admissible for impeachment purposes. The district court reasoned that evidence of Whisler's prior felony DUI conviction rebutted his testimony that he was unaware of his impairment. We agree. The felony DUI conviction demonstrated that Whisler had indeed experienced "impairment" and was familiar with the symptoms of impairment. Further, the district court instructed the jury that evidence of Whisler's prior felonies may be considered only for limited purposes: (1) as evidence of Whisler's knowledge of impairment, (2) the absence of mistake on Whisler's part concerning his level of impairment and (3) to evaluate Whisler's credibility. The district court also instructed the jury that the evidence of Whisler's prior felonies may not be considered as evidence of his guilt for the charged crime. Thus, in light of Whisler's testimony and the cautionary instructions, the probative value of Whisler's felony conviction was not substantially outweighed by the danger of unfair prejudice. Accordingly, we conclude that the district court did not abuse its discretion in denying Whisler's motion in limine.

*Jury instruction*

At trial, the district court instructed the jury on the defense of involuntary intoxication by medication with the following instruction:

> If one should become intoxicated as a result of an innocent mistake of fact, but after becoming impaired was still sufficiently in possession of his facilities to know what he was doing and to understand the character of his acts, and with such knowledge and understanding should voluntarily drive a motor vehicle, the involuntariness of the intoxication would not excuse him because the prohibited act (driving) was done voluntarily.

Whisler also urged the court to instruct the jury that the State must prove beyond a reasonable doubt that Whisler was not involuntarily intoxicated or intoxicated by mistake. The district court denied Whisler's request.

Whisler argues that knowingly or willfully becoming intoxicated is an element of the crime that the State must prove. He also argues against the notion that DUI is a strict liability offense and contends that a *mens rea* is required for a DUI conviction. In this, Whisler notes the State's allegation that he "willfully and unlawfully" drove a vehicle while under the influence of chemicals. For

support, Whisler relies upon *Commonwealth v. Wallace,* in which the Massachusetts Court of Appeals held that a defendant may introduce "evidence that he did not know of the possible effects of the medication on his driving ability, that he did not receive warnings as to its use, and that he had no reason to anticipate the effects which the drug induced."[10] The court of appeals recognized that "courts are reluctant to infer a legislative intent to impose absolute liability."[11] Because the language of the Massachusetts statute did not indicate an intent to hold a defendant strictly liable for the particular offense, the *Wallace* court determined that a defendant may introduce evidence of willfulness.[12] Thus, Whisler argues that, as in *Wallace,* DUI is not a strict liability offense in Nevada.

Whisler was convicted of violating NRS 484.379(2)(a) and (c), which provide that "[i]t is unlawful for any person who . . . [i]s under the influence of a controlled substance . . . or . . . ingests . . . any chemical . . . to a degree which renders him incapable of safely driving . . . to drive . . . a vehicle on a highway." Despite Whisler's reliance on the word "willfully" as stated in the amended information, "willfully" described driving rather than "willfully becoming impaired" as Whisler contends. Whisler does not contest the fact that he was driving his vehicle willfully. NRS 484.379 therefore does not include willful intoxication as an element of the offense.

In *Slinkard v. State,* we explained: "[k]nowledge of one's intoxication is not, however, an element of the crime of driving while intoxicated, and absence of such knowledge is not a defense. Indeed, because consumption of alcohol can prevent a person from knowing he is intoxicated, accepting appellant's contention could vitiate the DUI statutes."[13] Lack of knowledge of one's intoxication is similar to the defense of involuntary intoxication by medication in that in each defense the defendant argues that he did not know he was intoxicated or impaired. As the State notes, to give credence to either defense and to require the State to prove knowledge of intoxication or impairment would create too heavy a burden on the State and endanger the public. The State also points out that in many cases the intoxicated defendant does not know that he is intoxicated, precisely because of the intoxicating effects of the substance he has ingested. We have refused to recognize such a defense in DUI cases. Accordingly, Whisler's argument is without merit.

---

[10]439 N.E.2d at 852-53.

[11]*Id.* at 852.

[12]*Id.* at 851-52.

[13]106 Nev. 393, 395-96, 793 P.2d 1330, 1332 (1990) (citations omitted).

*NRS 484.379*

Whisler argues that he cannot be convicted based on the voluntary ingestion of a drug that was not scheduled, controlled or otherwise prohibited. Blood tests revealed that Whisler had ingested the drug carisoprodol, which is not a controlled substance in Nevada.[14] However, Whisler was convicted of driving while under the influence of a controlled substance or *chemical* in violation of NRS 484.379. Carisoprodol is a chemical, and a jury found beyond a reasonable doubt that it rendered him incapable of driving safely while under its influence.[15]

For the foregoing reasons, we affirm the district court verdict finding appellant guilty of driving while under the influence of controlled substances or chemicals.

MAUPIN and DOUGLAS, JJ., concur.

---

[14]NRS 0.031 defines "controlled substance" as "a drug, immediate precursor or other substance which is listed in schedule I, II, III, IV or V for control by the State Board of Pharmacy pursuant to NRS 453.146." Carisoprodol is not listed in the schedules. Carisoprodol's metabolite, meprobamate, however, is listed in Schedule IV. *See* NAC 453.540.

[15]*See* NRS 454.005 ("'Chemical' includes all chemicals intended, designed and labeled for use in the cure, treatment, mitigation or prevention of disease in man or other animals.").